# IN THE SUPREME COURT OF TEXAS

════════════
No. 11-0195
════════════

MONCRIEF OIL INTERNATIONAL INC., PETITIONER,

v.

OAO GAZPROM, GAZPROM EXPORT, LLC, AND GAZPROM MARKETING &
TRADING, LTD., RESPONDENTS

════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS
════════════════════════════════════════════════

**Argued February 6, 2012**

JUSTICE GUZMAN delivered the opinion of the Court.

CHIEF JUSTICE JEFFERSON did not participate in the decision.

We have observed that the business contacts needed for specific personal jurisdiction over a nonresident defendant "are generally a matter of physical fact, while tort liability (especially misrepresentation cases) turns on what the parties thought, said, or intended. Far better that judges should limit their jurisdictional decisions to the former rather than involving themselves in trying the latter."[1] Here, nonresident defendants allegedly committed the tort of misappropriating purported trade secrets from a Texas company concerning a proposed Texas venture during two meetings in

---

[1] *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 791 (Tex. 2005).

Texas. The defendants claim their intent in attending the meetings was to discuss an unrelated matter and that they informed the plaintiff of that intent at the meetings. But what the parties thought, said, or intended is generally irrelevant to their jurisdictional contacts. Regardless of the defendants' subjective intent, their Texas contacts are sufficient to confer specific jurisdiction over the defendants as to the trade secrets claim.

The nonresident defendants also face claims of tortious interference with the Texas corporation's relationship with a California corporation. But the tortious interference claims either arise from a meeting in California (which cannot support jurisdiction in Texas) or the formation of a competing enterprise in Texas by an entity not subject to jurisdiction in this proceeding. The trial court granted the special appearance, which the court of appeals affirmed. Because we hold there is jurisdiction over the trade secrets claim, but not over the tortious interference claims, we reverse in part and affirm in part the court of appeals' judgment and remand to the trial court for further proceedings.

## I. Background

Moncrief Oil International, Inc. (Moncrief) is a Texas-based company that entered into a series of contracts in 1997 and 1998 with two subsidiaries of OAO Gazprom (Gazprom) regarding development of a Russian gas field known as the Y-R Field. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 310 (5th Cir. 2007). Gazprom, a Russian company, is among the world's largest producers of natural gas. After assuring Moncrief it would honor the contractual obligations of its subsidiaries, Gazprom later contracted with German entities to develop the Y-R Field. *Moncrief*, 481 F.3d at 311.

2

In the fall of 2003, Gazprom announced its intention to sell liquified natural gas to the United States and contacted oil companies in the American market. When Moncrief asked Gazprom to recognize its claimed interest or sell it an interest in the Y-R Field, Gazprom replied that it was interested only in trading its resources for access to the American downstream market. Along those lines, Moncrief had developed alleged trade secret information regarding a proposed joint venture with California-based Occidental Petroleum Corporation to import liquified natural gas to a regasification facility to be built in Ingleside, Texas.

Moncrief and Gazprom engaged in a series of communications (including phone calls, emails, and in-person meetings) to discuss Moncrief's rights in the Y-R Field and the establishment of a consortium with Moncrief, Occidental, and Gazprom to import liquified natural gas to Texas. Gazprom Export, LLC (Gazprom Export)—the Gazprom subsidiary that exports natural gas to countries outside the former Soviet Union—also took part in the discussions.

These discussions began with a meeting in Moscow in September 2004, where Moncrief proposed that: (1) Gazprom would grant Moncrief an interest in the Y-R Field; (2) Moncrief would grant Gazprom an interest in the proposed Texas regasification facility; and (3) Moncrief would grant Occidental a share of its interest in the Y-R Field. At the meeting, Moncrief provided Gazprom alleged trade secrets concerning the Texas facility and marketing plan. Later that month, Moncrief and Gazprom met in Washington, D.C., where Moncrief again provided Gazprom the alleged trade secrets. The parties then exchanged a series of emails and phone calls regarding the proposal.

In February 2005, Gazprom informed Moncrief it would not accept Moncrief's proposal. In June 2005, Moncrief sued Gazprom and the two subsidiaries it dealt with regarding the Y-R Field in federal court in Texas over its interest in the Y-R Field. *Moncrief*, 481 F.3d at 311. Ultimately, the Fifth Circuit Court of Appeals affirmed the dismissal of Gazprom due to lack of personal jurisdiction but noted that "even without other contacts, jurisdiction would exist if Gazprom committed a tort while in the state." *Id*. at 314–15.

In late 2005, the parties resumed in-person discussions, with meetings in Houston, Boston, and Fort Worth, where Moncrief provided updated versions of the alleged trade secrets to Gazprom. Gazprom representatives later met directly with Occidental representatives in California, and Occidental terminated the proposed venture with Moncrief after Gazprom refused to participate in the venture. A subsidiary of Gazprom Export (Gazprom Marketing & Trading, Ltd.) then established Gazprom Marketing & Trading USA, Inc. (GMT USA) in Houston to import Gazprom's liquified natural gas, regasify it, and sell it in the Unites States.

Moncrief sued Gazprom, Gazprom Export, and GMT USA in state court for tortious interference, trade-secret misappropriation, conspiracy to tortiously interfere, and conspiracy to misappropriate trade secrets. Gazprom and Gazprom Export (collectively the Gazprom Defendants) specially appeared, asserting that their contacts with Texas were random, not purposeful, and that Moncrief unilaterally disclosed the trade secrets. After a special appearance hearing with no live testimony, the trial court granted the Gazprom Defendants' special appearances. Findings of fact and conclusions of law were not requested or filed.

4

The court of appeals affirmed, holding that legally and factually sufficient evidence supported an implied finding that the location of the two Texas meetings was "merely random or fortuitous" as to Moncrief's trade secrets claim. 332 S.W.3d 1, 19–20. As to the tortious interference claims, the court held that the record conclusively established that any alleged tortious interference that might have occurred took place in California. *Id*. at 13–14. The court of appeals further held that the trial court did not abuse its discretion in refusing to allow Moncrief additional depositions.[2] *Id*. at 22–23.[3]

## II. Discussion

### A. Standard of Review

Texas courts may exercise personal jurisdiction over a nonresident if "(1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). Under the Texas long-arm statute, the plaintiff bears the initial burden of pleading allegations sufficient to confer jurisdiction. *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009). The long-arm statute allows the exercise of personal

---

[2] Moncrief also sued Gazprom Marketing & Trading, Ltd. and Gazprom Bank. Gazprom Bank was allegedly part of Gazprom's meeting with Occidental in California. The trial court granted its special appearance, and the court of appeals granted Moncrief's motion to dismiss Gazprom Bank. 332 S.W.3d at 5, n.1. Further, the court of appeals held that there was no jurisdiction over Gazprom Marketing & Trading, Ltd.—which Moncrief does not complain of here. *Id*. at 20–22.

[3] The Texas Civil Justice League, the Texas Oil & Gas Association, the Texas Association of Manufacturers, the Association of Electric Companies of Texas, and the Texas Association of Business collectively submitted an *amicus curiae* brief in support of Moncrief.

jurisdiction over a nonresident defendant who "commits a tort in whole or in part in this state." TEX. CIV. PRAC. & REM. CODE § 17.042(2). Although allegations that a tort was committed in Texas satisfy our long-arm statute, such allegations do not necessarily satisfy the U.S. Constitution. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 788 (Tex. 2005). Here, Moncrief pled that the Gazprom Defendants committed torts in Texas by misappropriating Moncrief's alleged trade secrets at Texas meetings. Thus, Moncrief has met its initial burden of alleging a cause of action sufficient to confer jurisdiction under the long-arm statute. *See* TEX. CIV. PRAC. & REM. CODE § 17.042(2).

When the initial burden is met, the burden shifts to the defendant to negate all potential bases for personal jurisdiction the plaintiff pled. *Retamco*, 278 S.W.3d at 337. As Moncrief's sole allegation as to personal jurisdiction is that the Gazprom Defendants committed torts in Texas, the Gazprom Defendants must negate that basis. In response, the Gazprom Defendants argue that exercising jurisdiction over them would violate due process. Asserting personal jurisdiction comports with due process when (1) the nonresident defendant has minimum contacts with the forum state, and (2) asserting jurisdiction complies with traditional notions of fair play and substantial justice. *Id*. at 338. A defendant establishes minimum contacts with a forum when it "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id*. (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

A nonresident's contacts can give rise to general or specific personal jurisdiction. *Id*. Continuous and systematic contacts with a state give rise to general jurisdiction, while specific jurisdiction exists when the cause of action arises from or is related to purposeful activities in the

6

state. *Id.* Here, Moncrief's asserted basis is specific jurisdiction, which focuses on the relationship between the defendant, Texas, and the litigation to determine whether the claim arises from the Texas contacts. *See id.*

When, as here, the trial court does not issue findings of fact and conclusions of law, we imply all relevant facts necessary to support the judgment that are supported by evidence.[4] *Id.* at 337 (quoting *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002)). The ultimate question of whether a court has personal jurisdiction over a nonresident defendant is a question of law we review *de novo*. *Moki Mac*, 221 S.W.3d at 574.

As an initial matter, specific jurisdiction requires us to analyze jurisdictional contacts on a claim-by-claim basis. *See, e.g.*, *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 660 (Tex. 2010) (separately analyzing jurisdictional contacts for fraud and trust fund claims to determine specific jurisdiction). The Fifth Circuit has expressly held that a "plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 275 (5th Cir. 2006). As the Court explained,

---

[4] Moncrief's briefing asserts that an appellate court should review a trial court's implied findings on a special appearance *de novo* when there is no live testimony. But we need not address this issue because the relevant facts are undisputed. As to the trade secrets claim, the Gazprom Defendants' contacts with Texas are sufficient to support specific jurisdiction under our existing framework for reviewing special appearance rulings. *See infra* Part II.B. And as to the tortious interference claims, we agree with the courts below that the claims do not arise from or relate to Texas contacts—a question of law unaffected by the operation of implied findings of relevant fact necessary to support the special appearance ruling. *See infra* Part II.C*; see also Moki Mac*, 221 S.W.3d at 588–89.

7

This result flows logically from the distinction between general and specific jurisdiction and is confirmed by the decisions of our sister circuits. If a defendant does not have enough contacts to justify the exercise of general jurisdiction, the Due Process Clause prohibits the exercise of jurisdiction over any claim that does not arise out of or result from the defendant's forum contacts.

*Id*. at 274–75.[5] Of course, a court need not assess contacts on a claim-by-claim basis if all claims arise from the same forum contacts.[6] Because we determine that the tortious interference claims arise from separate jurisdictional contacts than the trade secrets claim, we analyze those contacts separately.

## B. Trade Secrets Claim

### 1. Minimum Contacts

The parties primarily dispute whether Gazprom's Texas contacts relating to the trade secrets claim were purposeful. The Gazprom Defendants assert that any contacts with Texas were not purposeful because Moncrief unilaterally disclosed the alleged trade secrets and the meetings in Texas were simply fortuitous—as evidenced by meetings held in Moscow, Boston, and Washington, D.C. The Gazprom Defendants assert they informed Moncrief at the meetings that they would only discuss the potential venture once Moncrief dismissed the lawsuit regarding the Y-R Field. Moncrief contends the disclosure was not unilateral because: (1) the purpose of discussions was to settle the

---

[5] *See also Touradji v. Beach Capital P'ship*, 316 S.W.3d 15, 25–26 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *Barnhill v. Automated Shrimp Corp.*, 222 S.W.3d 756, 766–67 (Tex. App.—Waco 2007, no pet.); *Remick v. Manfredy*, 238 F.3d 248, 255–56 (3d Cir. 2001); *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 289 (1st Cir. 1999).

[6] *See, e.g.*, *Touradji*, 316 S.W.3d at 26; *Sutton v. Advanced Aquaculture Sys., Inc.*, 621 F.Supp.2d 435, 442 (W.D. Tex. 2007).

dispute relating to the Y-R Field in exchange for Gazprom's participation in the venture, and (2) the Texas meetings were not fortuitous because they were located in the state where Moncrief is headquartered and where the proposed regasification facility would be located. We agree with Moncrief that the contacts were purposeful but for different reasons.

When determining whether a nonresident purposefully availed itself of the privilege of conducting activities in Texas, we consider three factors:

> First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated. Thus, sellers who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to the jurisdiction of the latter in suits based on their activities. Finally, the defendant must seek some benefit, advantage or profit by availing itself of the jurisdiction.

*Retamco*, 278 S.W.3d at 338–39; *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473, 475 (1985); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This analysis assesses the quality and nature of the contacts, not the quantity. *Retamco*, 278 S.W.3d at 339.

The United States Supreme Court has specified that a nonresident's contacts are not unilateral or random and fortuitous when the defendant "has created 'continuing obligations' between *himself* and residents of the forum," which shields the nonresident with the benefits and protections of the forum's laws. *Burger King*, 471 U.S. at 475 (quoting *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 648 (1950)). Further, the Court has stated that jurisdiction is proper "where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum State." *Id*. (quotation marks omitted). A substantial connection can result from even a single act. *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957). But the unilateral activity of

9

another person cannot create jurisdiction. *Burger King*, 471 U.S. at 475. Physical presence in the

state is not required but "frequently will enhance a potential defendant's affiliation with a State and

reinforce the reasonable foreseeability of suit there." *Id*. at 476. At its core, the purposeful

availment analysis seeks to determine whether a nonresident's conduct and connection to a forum

are such that it could reasonably anticipate being haled into court there. *Id*. at 474.

The Court has also recognized "it is beyond dispute that [a forum] has a significant interest

in redressing injuries that actually occur within the State." *Keeton v. Hustler Magazine, Inc.*, 465

U.S. 770, 776 (1984). As the Court has expounded:

> A state has an especial interest in exercising judicial jurisdiction over those who
> commit torts within its territory. This is because torts involve wrongful conduct
> which a state seeks to deter, and against which it attempts to afford protection, by
> providing that a tortfeasor shall be liable for damages which are the proximate result
> of his tort.

*Id*. (quoting *Leeper v. Leeper*, 319 A.2d 626, 629 (N.H. 1974); RESTATEMENT (SECOND) OF

CONFLICTS OF LAWS § 36, cmt. c (1971)).[7] Of course, states have an interest in protecting against

more than torts, and the Supreme Court has recognized state interests in protecting regulatory

schemes and contracts as well. *See Travelers Health Ass'n*, 339 U.S. at 648 (recognizing the "state's

interest in faithful observance" of its regulatory scheme by nonresidents); *McGee*, 355 U.S. at 223

(observing that the forum "has a manifest interest in providing effective means of redress for its

residents" in relation to contract disputes).

---

[7] The Restatement provides that "[a] state has power to exercise judicial jurisdiction over an individual who has done, or has caused to be done, an act in the state with respect to any cause of action in tort arising from the act." RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 36 (1971).

Although a forum's interest in protecting against torts may operate to enhance the substantiality of the connection between the defendant and the forum, it cannot displace the purposeful availment inquiry. We have previously observed that Texas's interest in protecting its citizens against torts is insufficient to automatically exercise personal jurisdiction upon an allegation that a nonresident directed a tort from outside the forum against a resident. *Michiana*, 168 S.W.3d at 790–91. In *Michiana*, a Texan placed a phone call to an Indiana recreational vehicle dealer, paid for the vehicle in Indiana, and arranged to have the vehicle shipped from Indiana to Texas. *Id*. at 784. He later sued the dealer in Texas, claiming a misrepresentation in the phone call from Texas subjected the dealer to specific personal jurisdiction in Texas court. *Id*. We held that, although the dealer allegedly committed a tort against a resident, its contacts with Texas were only receiving the phone call and transferring the vehicle to the shipper the buyer had designated to transport the vehicle to Texas. *Id*. at 786–87. Neither contact constituted purposeful availment because the dealer "had no say in the matter."[8] *Id*. at 787.

*Michiana* overruled a myriad of court of appeals cases where jurisdiction was predicated solely on the receipt of an out-of-state phone call or that analyzed whether the defendant's contacts were tortious rather than examining the contacts themselves. *Id*. at 791–92. But, importantly, we differentiated cases where the defendant's conduct "was much more extensive and was aimed at getting extensive business in or from the forum state." *Id*. at 789–90 & n.70. We cited as an

---

[8] *See also CMMC v. Salinas*, 929 S.W.2d 435, 439 (Tex. 1996) (a French winepress maker shipping a winepress to a Texas customer was insufficient to constitute purposeful availment).

11

example a case predicating jurisdiction on acts seeking to obtain business in Texas. *Id*. at 790 n.70

(citing *Union Carbide Corp. v. UGI Corp.*, 731 F.2d 1186, 1189-90 (5th Cir. 1984)).

Here, the Gazprom Defendants' contacts with Texas were neither unilateral activities by

Moncrief nor random and fortuitous. Unlike in *Michiana*, the Gazprom Defendants had a "say in

the matter." 168 S.W.3d at 787. They were not unilaterally haled into forming contacts with Texas;

rather, they agreed to attend Texas meetings.[9] And the Gazprom Defendants accepted Moncrief's

alleged trade secrets at those meetings.[10] *See Retamco*, 278 S.W.3d at 340 (affirming exercise of

specific personal jurisdiction when defendant "was a willing participant in a transaction with an

affiliated Texas company").[11]

---

[9] *See Woodson*, 444 U.S. at 299 (no jurisdiction over a nonresident automobile distributor whose only tie to the state was a customer's unilateral decision to drive there); *Kulko v. Cal. Superior Court*, 436 U.S. 84, 93–94 (1978) (no jurisdiction over a nonresident divorced husband owing child support to a former spouse who unilaterally decided to move to another state); *Hanson*, 357 U.S. at 251 (no jurisdiction over a nonresident trustee whose only connection to the state resulted from the settlor's unilateral decision to exercise her power of appointment in that state).

[10] Moncrief substantiated its allegations with evidence that the Gazprom Defendants accepted the alleged trade secrets at the Texas meetings. For example, an affidavit and deposition testimony of Richard Moncrief, who attended the Texas meetings, stated that Moncrief provided the Gazprom Defendants updated versions of the trade secrets at both meetings. The Gazprom Defendants cite to evidence that they announced an intent not to discuss the proposed joint venture at the meetings and did not agree to keep the alleged trade secrets confidential in exchange for receiving them. But the Gazprom Defendants do not cite, and we cannot locate, any evidence in the record that the Gazprom Defendants did not receive the alleged trade secrets at the meetings. Therefore, we cannot imply a finding that the Gazprom Defendants did not receive the alleged trade secrets because such a finding is not supported by evidence. *See Retamco*, 278 S.W.3d at 337.

[11] Moreover, the previous meetings in Moscow, Boston, and Washington, D.C. did not render the two Texas meetings random and fortuitous because: (1) the discussions were regarding a joint venture in Texas, *see Michiana*, 168 S.W.3d at 789–90 & n.70, and (2) Moncrief was headquartered in Texas, *see Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 114 (1987). Moreover, the information was revised and updated before the Texas meetings.

Additionally, the Gazprom Defendants' contacts were purposeful and substantial because their activity "was aimed at getting extensive business in or from the forum state." *Michiana*, 168 S.W.3d at 789–90. While we have held that a single business transaction occurring outside the state is insufficient to confer specific jurisdiction, *id*. at 787–88, the United States Supreme Court concluded that forming an enterprise in one state to send payments to a corporation in the forum state was sufficient to confer specific jurisdiction, *Burger King*, 471 U.S. at 468, 478. Because the Gazprom Defendants attended two Texas meetings, at which they accepted Moncrief's alleged trade secrets regarding a proposed joint venture in Texas, their contacts were not unilaterally from Moncrief, nor were they random and fortuitous.[12]

The Gazprom Defendants protest that their subjective intent in attending the meetings was solely to discuss settlement of the Y-R Field dispute, indicating they did not purposefully avail themselves of doing business in Texas. But the Gazprom Defendants attended the two Texas meetings where they accepted the alleged trade secrets regarding a proposed Texas joint venture, which is the crux of the matter. As we stated in *Michiana*, courts at the jurisdiction phase examine business contacts, not what the parties thought or intended—which is the role of the fact-finder in assessing the merits of the claim. *See* 168 S.W.3d at 791. For example, if a nonresident defendant intended to drive through Texas and caused a vehicular accident in the state, her intent to simply pass

---

[12] Moncrief also asserts in its briefing the additional contacts by the Gazprom Defendants of use of the trade secrets in Texas. But Moncrief's live pleading alleges GMT USA is using those trade secrets in Texas and does not allege that the Gazprom Defendants provided the trade secrets to GMT USA in Texas. Moreover, the court of appeals rejected Moncrief's theory that GMT USA is the alter ego of another Gazprom subsidiary, which Moncrief does not appeal here. 332 S.W.3d at 20–22. Accordingly, we will not analyze these contacts for our purposeful availment analysis.

through the state would not negate the fact that she caused a vehicular accident. Here, the Gazprom Defendants intended to, and did, come to Texas for two meetings, at which they accepted alleged trade secrets from Moncrief that involved a proposed joint venture in Texas. The Gazprom Defendants' subjective intent does not negate their business contacts. *See id.*

Finally, the Gazprom Defendants benefitted from Texas. For contacts to be purposeful, the defendant must seek some "benefit, advantage, or profit" by availing itself of the forum. *Id*. at 785. This is premised on implied consent: a nonresident consents to suit by invoking the benefits and protections of a forum's laws.[13] *Id*. at 784. We have found jurisdiction over nonresidents with no physical ties to Texas when an out-of-state contract was formed "for the sole purpose of building a hotel in Texas," *Zac Smith & Co., Inc. v. Otis Elevator Co.*, 734 S.W.2d 662, 665–66 (Tex. 1987), and when enrollment for out-of-state school was executed in Arizona but was "actively and successfully solicited" in Texas, *Siskind v. Villa Found. for Educ., Inc.*, 642 S.W.2d 434, 437 (Tex. 1982); *see also Michiana*, 168 S.W.3d at 789–90 (discussing cases finding specific jurisdiction when forum contact "was aimed at getting extensive business in or from the forum state"). Here, Gazprom attended two Texas meetings with a Texas corporation and accepted alleged trade secrets created in Texas regarding a potential joint venture in Texas with the Texas corporation. Far from seeking to avoid Texas, Gazprom sought out Texas and the benefits and protections of its laws. *Burger King*, 471 U.S. at 474; *Michiana*, 168 S.W.3d at 785; *BMC Software*, 83 S.W.3d at 795.

---

[13] A nonresident may structure its business so as to not profit from a forum's laws and not be subject to its jurisdiction. *Michiana*, 168 S.W.3d at 785.

## 2. Fair Play and Substantial Justice

In addition to minimum contacts, due process requires the exercise of personal jurisdiction to comply with traditional notions of fair play and substantial justice. *Retamco*, 278 S.W.3d at 338. If a nonresident has minimum contacts with the forum, rarely will the exercise of jurisdiction over the nonresident not comport with traditional notions of fair play and substantial justice. *Id.* at 341. We undertake this evaluation in light of the following factors, when appropriate: (1) the burden on the defendant; (2) the interests of the forum in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the international judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several nations in furthering fundamental substantive social policies. *Spir Star AG v. Kimich*, 310 S.W.3d 868, 878 (Tex. 2010); *see Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113 (1987).

On balance, asserting personal jurisdiction over the Gazprom Defendants as to the trade secrets claim would not offend traditional notions of fair play and substantial justice. Subjecting the Gazprom Defendants to suit in Texas certainly imposes a burden on them, but the same can be said of all nonresidents. Distance alone cannot ordinarily defeat jurisdiction. *Spir Star*, 310 S.W.3d at 879 ("Nor is distance alone ordinarily sufficient to defeat jurisdiction: 'modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.'" (quoting *McGee*, 355 U.S. at 223)). Given the Gazprom Defendants' meetings with Moncrief in Texas and their increased familiarity with the forum and legal system through establishing a subsidiary headquartered here, the burden of litigating in Texas is not so severe as to defeat jurisdiction. *See id*. (holding jurisdiction was appropriate where German

15

company officers traveled to Houston to establish a distributing company). And this burden is somewhat mitigated by the convenience to Moncrief, a Texas resident, of litigating in the forum where the alleged trade secrets were appropriated and then purportedly used. Moreover, the allegations that the Gazprom Defendants committed a tort in Texas against a resident implicate a serious state interest in adjudicating the dispute.[14] Finally, because these claims will be litigated with GMT USA in a Texas court, it promotes judicial economy to litigate the claims as to all parties in one court. *See id.* ("[B]ecause the claims against [the resident defendant] will be heard in Texas, it would be more efficient to adjudicate the entire case in the same place."). On balance, the burden on the Gazprom Defendants of litigating in a foreign jurisdiction is minimal and outweighed by Texas's interests in adjudicating the dispute. *Id.* at 879–80.

The Gazprom Defendants counter that the Russian government is the majority owner of Gazprom and government officials at the highest level are aware of Moncrief's claims. In support, the Gazprom Defendants cite to *Solgas Energy Ltd. v. Global Steel Holdings Ltd.*, where a nonresident was sued over an alleged bribe to a Nigerian official to terminate its contract with the plaintiff. No. 04-06-00731-CV, 2007 WL 1892206, at *2, 7 (Tex. App.—San Antonio July 3, 2007, no pet.) (mem. op.). There, the court of appeals held that Texas's interest in resolving the dispute was tenuous because the United States federal government has an interest in foreign relations and the bribery allegations implicated Nigerian law. *Id.* at *7. But here, Gazprom is not wholly owned

---

[14] *See Keeton*, 465 U.S. at 776 ("A state has an especial interest in exercising judicial jurisdiction over those who commit torts within its territory."); *see also Asahi Metal*, 480 U.S. at 114 ("Because the plaintiff is not a California resident, California's legitimate interests in the dispute have considerably diminished.").

16

by the Russian government, Moncrief's claims against the Gazprom Defendants do not implicate any government officials, and no other jurisdiction has as significant an interest as Texas does in resolving a claim for a tort committed in Texas against a Texas resident. On balance, this is not one of the rare cases where exercising jurisdiction fails to comport with fair play and substantial justice.[15] Accordingly, we hold that the trial court has jurisdiction over the Gazprom Defendants as to the trade secrets claim.

### C. Tortious Interference Claims

Moncrief also brought claims against the Gazprom Defendants for tortiously interfering with existing and prospective business relationships. Moncrief contends the Gazprom Defendants' appropriation of the alleged trade secrets in Texas and use of the information to form a competing enterprise destroyed Moncrief's existing and prospective relationships with Occidental. The Gazprom Defendants respond, and the court of appeals held, that the tortious interference claims do not arise from the Texas meetings or their receipt of the information from Moncrief. We agree.

Specific jurisdiction exists only if the alleged liability arises out of or is related to the defendant's activity within the forum. *Moki Mac*, 221 S.W.3d at 573. In considering competing interpretations of the phrase, we ultimately determined "for a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation." *Id*. at 585. In *Moki Mac*, a Texas teenager fell to

---

[15] The Gazprom Defendants also contend the information they received from Moncrief did not constitute trade secrets. Although they may well ultimately prevail on this theory, it is a merits issue that is inappropriate at the jurisdiction stage. *Michiana*, 168 S.W.3d at 790–91.

his death in Arizona while on a hike supervised by a Utah-based company. *Id*. at 573. His parents filed suit against the company in Texas for wrongful death, maintaining the claim arose from misrepresentations in documents the company mailed to them in Texas as well as the company's other Texas contacts. *Id*. at 573, 576. We disagreed, holding "the operative facts of the [plaintiffs'] suit concern principally the guides' conduct of the hiking expedition and whether they exercised reasonable care in supervising" the teenager. *Id*. at 585. We further observed the "events on the trail and the guides' supervision of the hike will be the focus of the trial, will consume most if not all of the litigation's attention, and the overwhelming majority of the evidence will be directed to that question." *Id*.

Here, Moncrief alleges the Gazprom Defendants tortiously interfered with its agreement and relationship with Occidental, causing Occidental to breach its agreement and cease its relationship with Moncrief. *See Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 721–22, 727 (Tex. 2001) (discussing tortious interference with contract and tortious interference with prospective contractual or business relations claims). Under the framework we established in *Moki Mac*, Moncrief's tortious inference claims principally concern two activities: (1) discussions between Gazprom and Occidental in California where Gazprom allegedly attempted to convince Occidental to proceed with a joint venture that did not include Moncrief, and (2) the Gazprom Defendants' establishment of a competing enterprise in Texas, thereby diminishing the value of a joint venture between Occidental and Moncrief to accomplish the same purpose. *See Moki Mac*, 221 S.W.3d at 585.

Moncrief also argues its tortious interference claims arise from a third set of contacts: the Gazprom Defendants' purported misappropriation of Moncrief's alleged trade secrets in Texas. We

disagree. Much like the accident in *Moki Mac* would not have occurred but for executing contract materials in Texas, the establishment of a competing enterprise arguably would not be possible without the Gazprom Defendants' purported acquisition of the alleged trade secrets. *See id*. at 585. However, but-for causation alone is insufficient. *Id*. Just as the wrongful death claim in *Moki Mac* was principally concerned with alleged negligence in Arizona, the tortious interference claim here is principally concerned with the California meeting and the competing Texas enterprise—not the purported misappropriation of alleged trade secrets. *See id*.

Neither the California meeting nor the competing enterprise in Texas can form the basis for specific jurisdiction over the Gazprom Defendants in Texas. As we held in *Michiana*, a nonresident directing a tort at Texas from afar is insufficient to confer specific jurisdiction. 168 S.W.3d at 790–92. The focus is properly on the extent of the defendant's activities in the forum, not the residence of the plaintiff. *Id*. at 789. Thus, the Gazprom Defendants' alleged tortious conduct in California against a Texas resident is insufficient to confer specific jurisdiction over the Gazprom Defendants as to Moncrief's tortious interference claims. *See id*. at 789–92.

Moreover, Moncrief's allegation that the Gazprom Defendants established a competing enterprise in Texas cannot support specific jurisdiction. Moncrief alleges Gazprom Marketing & Trading, Ltd., a Gazprom subsidiary, formed GMT USA as a competing enterprise in Texas. But the court of appeals rejected Moncrief's theory that GMT USA is the alter ego of Gazprom Marketing & Trading, Ltd. 332 S.W.3d at 20–22; *see PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 175 (Tex. 2007) (imputing jurisdictional contacts to another entity requires assessing "the amount of the subsidiary's stock owned by the parent corporation, the existence of

19

separate headquarters, the observance of corporate formalities, and the degree of the parent's control over the general policy and administration of the subsidiary"). Moncrief does not challenge that ruling here. Additionally, Moncrief does not allege the Gazprom Defendants provided the trade secrets to GMT USA in Texas. Therefore, we cannot impute the Texas contacts regarding the competing enterprise to the Gazprom Defendants. In sum, we conclude neither the California contacts nor the establishment of a competing enterprise supports an exercise of jurisdiction over the Gazprom Defendants as to the tortious interference claims.

### D. Additional Depositions

Finally, Moncrief contends the trial court erred in refusing to allow the deposition of Gazprom's deputy chairman and a representative of Gazprom Bank. The court of appeals held the trial court did not abuse its discretion because it could have reasonably concluded the testimony would be cumulative as to the jurisdictional facts. 332 S.W.3d at 23. We agree.

Initially, we note that because we have concluded the trial court has specific jurisdiction over the Gazprom Defendants as to the trade secrets claim, further deposition testimony regarding these claims is unnecessary. But we have also determined there is no specific jurisdiction over the Gazprom Defendants as to the tortious interference claims. If the depositions Moncrief sought could yield jurisdictional facts that support jurisdiction as to the tortious interference claims, then the trial court abused its discretion.

Because Moncrief has not demonstrated what additional jurisdictional facts the depositions would provide, we conclude the trial court did not abuse its discretion. Moncrief claims Gazprom's deputy chairman sent a representative of Gazprom Bank to California to meet with Occidental. In

20

its motion to compel, Moncrief sought to depose Gazprom's deputy chairman because it believed he would provide testimony regarding the meetings with Moncrief. It also sought to depose the Gazprom Bank representative because it believed he would provide testimony regarding his meeting with Occidental. But Moncrief already deposed the consultant for Gazprom who attended the meeting with Occidental (as well as both Texas meetings) and one of Occidental's representatives from that meeting—who both testified as to what the Gazprom Bank representative said. Moncrief has not identified what additional testimony the depositions of the Gazprom Bank representative or Gazprom's deputy chairman would provide regarding Texas contacts with respect to the tortious interference claims. Therefore, we hold the trial court did not abuse its discretion in denying Moncrief's motion to compel the depositions. *See BMC Software*, 83 S.W.3d at 800–01 (holding trial court did not abuse discretion in denying continuance before special appearance hearing).

### III. Conclusion

The Gazprom Defendants attended two Texas meetings with a Texas corporation and accepted alleged trade secrets created in Texas regarding a potential Texas-based joint venture with the Texas corporation. These contacts were neither unilaterally from Moncrief nor random and fortuitous, and they indicate the Gazprom Defendants were benefitting from the protection of Texas laws. Therefore, we conclude the trial court has specific personal jurisdiction over Moncrief's trade secrets claim, and the court of appeals erred in affirming the special appearance as to this claims.[16]

---

[16] Moncrief's conspiracy claims (for conspiracy to tortiously interfere and conspiracy to misappropriate trade secrets) are not factually distinct from the underlying trade secret and tortious interference claims. *See* 332 S.W.3d at 10 n.7 ("[B]ecause no factually distinct basis exists for Moncrief Oil's conspiracy claims, they add nothing to our jurisdictional analysis."). Accordingly,

21

But we agree with court of appeals that the trial court has no specific personal jurisdiction over the Gazprom Defendants as to Moncrief's tortious interference claims and that the trial court did not abuse its discretion in refusing to compel additional depositions. Accordingly, we reverse the judgment of the court of appeals in part, affirm in part, and remand to the trial court for further proceedings consistent with this opinion.

_____
Eva M. Guzman
Justice

OPINION DELIVERED: August 30, 2013

---

the exercise of jurisdiction is proper over the conspiracy to misappropriate trade secrets claim, *see supra* Part II.B, and improper over the conspiracy to tortiously interfere claim, *see supra* Part II.C.