**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-23-00386-CV**
_____

**RED BOX ENERGY SERVICES PTE. LTD. and RBES B.V., Appellants**

**V.**

**WILLIAM BUCK, Appellee**

_____

**On Appeal from the 58th District Court**
**Jefferson County, Texas**
**Trial Cause No. A-209,302**
_____

**MEMORANDUM OPINION**

Appellants Red Box Energy Services Pte. Ltd. and RBES B.V. (collectively "Appellants") filed an interlocutory appeal from the trial court's denial of Appellants' special appearances. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7). For the reasons explained below, we reverse the trial court's order denying Appellants' special appearance and render the judgment the trial court

should have rendered, dismissing Appellee William Buck's ("Appellee") claims against Appellants for lack of personal jurisdiction. *See* Tex. R. App. P. 43.2(c).

## Background

On February 8, 2022, Appellee filed the underlying lawsuit for personal injuries that he allegedly sustained on April 23, 2021, while onboard the AUDAX, a vessel docked at the Port of Beaumont in Beaumont, Jefferson County, Texas. Appellee was aboard the vessel acting as a fire watch for his employer, Biehl International Corporation, LLC and/or Biehl & Co. Texas, LLC ("Biehl") when he was allegedly injured. At the time of Appellee's alleged injury, the AUDAX was owned by Fortune Haumea Holding Company Limited ("Fortune Haumea") and operated by ZPMC-Red Box Energy Services Limited ("ZPMC-RB") under a bareboat charter issued by Fortune Haumea. ZPMC-RB was a joint venture between majority shareholder, ZPMC Offshore Services Co., Ltd., and RBF HK Limited, a Chinese entity. That same month, Fortune Haumea notified ZPMC-RB of its intent to terminate the bareboat charter and sent notice of its intent to auction the AUDAX to the highest bidder.

In August 2020, approximately eight months prior to the Appellee's alleged accident, individuals involved in the management of the ZPMC-RB joint venture formed Appellants Red Box Energy Services Pte. Ltd. and subsidiary, RBES B.V. According to Appellants, the majority partner/owner in ZPMC-RB was not

2

involved in the new entities and the entities were created so that the individuals would have continued work if ZPMC-RB ceased operations. Neither of the newly formed entities had operations or activities at the time and did not become active until May 2021.

On May 20, 2021, Red Box Energy Logistics Pte. Ltd. ("RBEL"), an affiliate of Appellants, purchased the AUDAX at a public foreclosure auction for $60 million. RBEL is a company incorporated under the laws of the Republic of Singapore and is wholly owned by Appellant Red Box Services Pte. Ltd. RBEL then sold the AUDAX to its current owners, Fortune MC Hercules Shipping Limited ("Fortune MC"), and leased back the AUDAX under a bareboat charter. The AUDAX is currently owned by Fortune MC and operated by RBEL.

In his live pleading, Appellee brought causes of action of negligence and negligent undertaking against Exxon Mobil Corporation; his employer, Biehl; Fortune Haumea and ZPMC-RB, the owner and operator of the AUDAX at the time of his alleged injury; Fortune MC and RBEL, the current owner and operator of the AUDAX; and Appellants.

In December 2022, Appellants filed their Special Appearance in response to Appellee's First Amended Petition. Appellants requested that the trial court dismiss all claims against them for lack of personal jurisdiction. According to Appellants, neither of them is subject to the general jurisdiction of Texas because

both are foreign corporations organized and existing under the laws of the Republic of Singapore and The Netherlands. Additionally, Appellants allege they do not have offices, operations, bank accounts, employees or assets in Texas, and Appellee has not pled otherwise.

Appellants state that neither of them is subject to specific jurisdiction in Texas because specific jurisdiction requires that the cause of action arise from their purposeful contacts with Texas. Because Appellee's claims arise out of Appellants' alleged ownership and control of the AUDAX, and Appellants did not gain ownership or control of the AUDAX until after Appellee's alleged injury, Appellee cannot establish minimum contacts that would allow Appellants to be subject to suit in Texas. Finally, Appellants state that the exercise of personal jurisdiction over either Appellant would not comport with fair play and substantial justice due to the unique burden Appellants would bear defending themselves in a foreign legal system. Appellants argue that Appellee can still pursue his claims against the entities that owned and controlled the AUDAX at the time of his alleged accident, and the difficulty in enforcing a judgment against Appellants that do not have assets in Texas weighs against personal jurisdiction.

In response, Appellee argues that Appellants are attempting to avoid liability by shielding themselves through subsidiaries and affiliates and the intertwined relationships of the entities operating under the Red Box name. According to

4

Appellee, RBEL pays the employees of Appellant RBES B.V. and Defendant Red Box Energy Services B.V., a subsidiary of the joint venture ZPMC-RB. Appellee alleges that RBEL and Appellant RBES B.V. share the same registered address in The Netherlands. Appellee further argues that his employer, Biehl, contracted with Red Box Energy Services and RBES B.V. to provide services related to the AUDAX and that Biehl has received payments from both Appellants. According to Appellee, Biehl was never notified its business transactions were limited to certain Red Box entities.

Appellee argues that Biehl directed several invoices to Appellants' business address regarding transportations made by the AUDAX and the PUGNAX, another vessel controlled, managed, operated, or owned by Appellants. Appellee further argues that Appellant RBES B.V. made a payment for expenses to Biehl before the May 2021 date of operations. According to Appellee, Appellants' corporate representative indicated that this payment was made prior to the date of operations because the company wanted "to have the possibility of doing business together potentially at a later date."

Finally, Appellee argues that additional evidence that Appellants have purposely availed themselves to meet general and specific jurisdiction is that the Red Box companies are intertwined to include Appellants' designation of "RBES"

5

as the company's new name in an email, the shared domain and email addresses, and the employment of the same personnel from other Red Box entities.

In their reply brief in support of their Special Appearance, Appellants argue they are separate and distinct legal entities from Fortune Haumea and ZPMC-RB, the owner and operator of the AUDAX on the date of Appellee's alleged injury, and Appellants had no relationship with the AUDAX prior to May 20, 2021. Appellants argue that Appellee is seeking to assert jurisdiction over Appellants based solely on Fortune Haumea's and ZPMC-RB's contacts and a single payment Appellant RBES B.V. made to Biehl months after Appellee's alleged injury. Appellants argue that the jurisdictional contacts of the AUDAX's prior owners, Fortune Haumea, cannot be imputed to Appellants because there is no basis to disregard the distinct corporate entities. According to Appellants, common use of the Red Box trade name does not establish an alter ego relationship and Appellee has not shown the required degree of control necessary to establish jurisdiction through a theory of alter ego.

The trial court conducted a hearing on Appellants' Special Appearance during which Appellants argued that Appellee failed to meet his burden to establish that general or specific jurisdiction existed at the time of the accident. Appellants explained that the AUDAX was not owned by Appellants at the time of Appellee's injury and that the two ownership structures are completely distinct and

6

separate. Appellants acknowledge use of the name Red Box but argue that use of the common name "Red Box" is not enough to create alter ego jurisdiction. According to Appellants, the same is true of entities sharing a business address and overlapping employees. Neither is sufficient to establish alter ego jurisdiction. Appellants emphasized that business relationships that are deeply intertwined with shared office space, phone numbers, officers, directors, and employees are separate companies unless you can demonstrate that one group of companies controlled the other group, and such is not the case here. Appellants acknowledged the existence of the companies' overlapping arrangements in some areas but argued that the newer companies were not operational at the time of the accident and that there is no evidence to show that corporate formalities were not observed to establish alter ego control. Appellants admitted that Appellant RBES B.V. made a single payment to Biehl months after the alleged injury. But Appellants argue that the payment on a single contract is not enough to create specific jurisdiction.

In response, Appellee argues that the newly formed entities involve all the same people from the group of entities that owned/operated the AUDAX at the time of Appellee's injury with the exception of the Hong Kong joint venture partner. Appellee argues that both entities have the same employees and that the one payment to Biehl by Appellants was a continuation of the same business as the prior owners/operators of the AUDAX. According to Appellee, the totality of

circumstances indicates that the Red Box entities are the same and they should be considered the same for jurisdictional purposes.

At the conclusion of the hearing, the trial court denied Appellants' Special Appearance. This appeal followed.

## Standard of Review

A nonresident defendant may challenge a Texas court's personal jurisdiction over it by filing a special appearance. Tex. R. Civ. P. 120a. "Whether a trial court has personal jurisdiction over a nonresident defendant is ultimately a question of law that we review de novo." *Oshman v. Wilkison*, No. 09-23-00201-CV, 2024 WL 1100005, at *5 (Tex. App.—Beaumont Mar. 14, 2024, no pet.) (mem. op.) (citations omitted); *see LG Chem Am., Inc. v. Morgan*, 670 S.W.3d 341, 346 (Tex. 2023); *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013); *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). The plaintiff has the initial burden of pleading sufficient allegations to bring a nonresident defendant within the jurisdiction of a Texas court. *LG Chem*, 670 S.W.3d at 346; *Booth v. Kontomitras*, 485 S.W.3d 461, 476 (Tex. App.—Beaumont 2016, no pet.) *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 149; *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010); *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009). If the plaintiff meets this initial burden, defendant then bears the burden to negate all bases of personal

8

jurisdiction alleged by plaintiff to prevail. *See LG Chem*, 670 S.W.3d at 346 (citing *Kelly*, 301 S.W.3d at 658). The defendant may negate the jurisdictional allegations on either a factual or legal basis. *Kelly*, 301 S.W.3d at 659.

> Factually, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations. The plaintiff can then respond with its own evidence that affirms its allegations, and it risks dismissal of its lawsuit if it cannot present the trial court with evidence establishing personal jurisdiction. Legally, the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; the defendant's contacts with Texas fall short of purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts; or that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction.

*Id.* (footnotes omitted). If the plaintiff does not plead facts bringing a defendant within reach of the Texas long-arm statute, the defendant need only prove that it does not live in Texas to negate jurisdiction. *Id.* at 658-59 (citing *Siskind v. Villa Found. for Educ., Inc.*, 642 S.W.2d 434, 438 (Tex. 1982)); *Booth*, 485 S.W.3d at 476. Thus the "paradig[m] . . . bases for general jurisdiction[]" over a foreign entity are its "place of incorporation and principal place of business[.]" *Skylift, Inc. v. Nash*, No. 09-19-00389-CV, 2020 WL 1879655, at *3 (Tex. App.—Beaumont Apr. 16, 2020, no pet.) (mem. op.) (citation omitted).

Where jurisdictional facts are undisputed, we do not consider any implied findings of fact, instead we consider only the legal question whether the undisputed facts establish Texas jurisdiction. *See Old Republic Nat'l Title Ins. Co. v. Bell*, 549

S.W.3d 550, 558 (Tex. 2018). When reviewing plaintiff's jurisdictional allegations, we only ask whether the allegations are sufficient to invoke the exercise of personal jurisdiction over the defendant regardless of the claims' merits. *See Booth*, 485 S.W.3d at 477.

"A court must have personal jurisdiction over a defendant to issue a binding judgment." *LG Chem*, 670 S.W.3d at 346 (citing *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 7-8 (Tex. 2021)). Texas courts may exercise jurisdiction over a nonresident as authorized by the Texas long-arm statute and when consistent with federal due-process guarantees. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 17.041-.045 (Texas long-arm statute); *LG Chem*, 670 S.W.3d at 346; *Luciano*, 625 S.W.3d at 8. The Texas long-arm statute provides that a non-resident does business in the state if the nonresident commits certain acts in Texas, including, but not limited to, the following:

1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;
2) commits a tort in whole or in part in this state; or
3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

Tex. Civ. Prac. & Rem. Code Ann. § 17.042. An allegation of jurisdiction may satisfy the Texas long-arm statute, but the allegation may not satisfy the United States Constitution. *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 149. Therefore, even if a court determines the facts satisfy the Texas long-arm statute, the court must also

10

examine the facts to determine whether the exercise of personal jurisdiction over the defendant comports with due process. *See CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996). Personal jurisdiction is consistent with due process when (1) the nonresident defendant has established minimum contacts with the forum state, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Kelly*, 301 S.W.3d at 657 (citation omitted).

The minimum contacts analysis requires "'some act by which the *defendant purposely avails* itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The focus is on defendant's activities and expectations. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002). A defendant's contacts may support either general personal jurisdiction or specific personal jurisdiction. *See Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 150; *Zinc Nacional, S.A. v. Bouche Trucking, Inc.*, 308 S.W.3d 395, 397 (Tex. 2010).

**Analysis**

General Jurisdiction

"General jurisdiction is established by a defendant's 'continuous and systematic' contacts that render it 'essentially at home in the forum State,'

11

irrespective of whether the defendant's alleged liability arises from those contacts." *Cornerstone Healthcare Grp. Holding, Inc. v. Nautic Mgmt. VI, L.P.*, 493 S.W.3d 65, 71 (Tex. 2016) (quoting *TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016)); *see also State v. Volkswagen Aktiengesellschaft*, 669 S.W.3d 399, 412 (Tex. 2023) (citations omitted); *TPC Grp. Litig.*, No. 09-22-00159-CV, 2024 WL 3197475, at *13 (Tex. App.—Beaumont June 27, 2024, no pet.) (mem. op.). There is no evidence that establishes the Appellants had "continuous and systematic" contacts such that they are rendered "essentially at home" in Texas. Therefore, there is no general jurisdiction established by Appellee. *See Volkswagen Aktiengesellschaft*, 669 S.W.3d at 412; *Cornerstone Healthcare*, 493 S.W.3d at 71; *TPC Grp. Litig.*, 2024 WL 3197475, at *13.[1]

Specific Personal Jurisdiction

Specific personal jurisdiction applies more narrowly than general jurisdiction. *Volkswagen Aktiengesellschaft*, 669 S.W.3d at 412 (citing *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 352 (2021)). Courts can exercise specific jurisdiction over a nonresident defendant when two conditions are met: (1) the defendant engages in some act by which it purposely avails itself of the privilege of conducting activities with the forum state; and (2) the plaintiff's claims arise out of or relate to those forum contacts. *Id.* at 412-13 (citing *Ford Motor Co.*,

---

[1] The parties recognized this and focused on specific jurisdiction during oral argument.

12

592 U.S. at 352; *Luciano*, 625 S.W.3d at 8-9); *see also Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 579 (Tex. 2007) (stating specific-jurisdiction analysis involves two co-equal components: purposeful availment and relatedness). This kind of personal jurisdiction involves a "'claim-by-claim'" analysis that focuses on the relationship between the defendant, the forum state, and the operative facts of the litigation. *Volkswagen Aktiengesellschaft*, 669 S.W.3d at 413 (quoting *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 150); *see Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262 (2017) (citation omitted); *TV Azteca*, 490 S.W.3d at 42 (quoting *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014)). We consider the "quality and nature of [these] contacts, rather than their number[.]" *Coleman*, 83 S.W.3d at 806 (citation omitted). Here, we examine Appellants' purposeful conduct and contacts with Texas, rather than another's conduct and contacts with Texas. *See Walden*, 571 U.S. at 291 ("[I]t is the defendant, not the plaintiff or third parties, who must create contacts with the forum State."). There must be a substantial connection between the nonresident's contacts and the operative facts of the litigation. *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 156. A substantial connection may result, however, from a single purposeful act. *Id.* at 151-52. The operative facts are those on which the trial court will focus to prove the liability of defendant who is challenging jurisdiction.

13

*Leonard v. Salinas Concrete, LP*, 470 S.W.3d 178, 188 (Tex. App.—Dallas 2015, no pet.).

<u>Purposeful Availment</u>

The first prong of specific jurisdiction, purposeful availment, is the "touchstone of jurisdictional due process[.]" *Michiana Easy Livin' Country, Inc.*, 168 S.W.3d at 784. The purposeful availment analysis asks whether "'a nonresident's conduct and connection to a forum are such that it could reasonably anticipate being haled into court there.'" *See Volkswagen Aktiengesellschaft*, 669 S.W.3d at 413 (quoting *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 152). "To show purposeful availment, a plaintiff must prove that a nonresident defendant seeks a benefit, advantage, or profit from the forum market." *In re Christianson Air Conditioning & Plumbing, LLC*, 639 S.W.3d 671, 679 (Tex. 2022) (citing *Michiana Easy Livin' Country, Inc.*, 168 S.W.3d at 785). We apply three considerations to determine purposeful availment:

- "[O]nly the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person";
- "The contacts relied upon must be purposeful," not "random, fortuitous, or attenuated"; and
- The defendant "must seek some benefit, advantage[,] or profit by availing itself of [Texas's] jurisdiction."

*Volkswagen Aktiengesellschaft*, 669 S.W.3d at 413-14 (quoting *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 151). "'This analysis assesses the quality and nature of the contacts, not the quantity.'" *Id.* (quoting *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at

14

151). "Where the defendant has 'deliberately' engaged in significant activities within a state, he 'manifestly has availed himself of the privilege of conducting business there.'" *Luciano*, 625 S.W.3d at 9 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985)). Under certain limited circumstances, one entity's contacts may be imputed to another entity for jurisdictional purposes, which we discuss below.

<u>Jurisdictional Veil-Piercing/Alter Ego</u>

Texas law presumes that two separate corporations are distinct entities, and a party seeking to ascribe one corporation's actions to another by disregarding their distinct corporate entities must prove this allegation. *BMC Software Belg., N.V.*, 83 S.W.3d at 798 (citations omitted). "Creation of affiliated corporations to limit liability while pursuing common goals lies firmly within the law and is commonplace." *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 455 (Tex. 2008). "'[S]o long as a parent and subsidiary maintain separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other[,]'" and "'100% stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego relationship between two corporations.'" *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 172 (Tex. 2007) (quoting *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983)).

15

"[I]t is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary[.]" *U.S. v. Bestfoods*, 524 U.S. 51, 69 (1998) (quoting *Am. Protein Corp. v. AB Volvo*, 844 F.2d 56, 57 (2d Cir. 1988) (other citation omitted)). "'[C]ases demand proof of control by the parent over the internal business operations and affairs of the subsidiary in order to fuse the two for jurisdictional purposes[,]'" and the "'degree of control exercised by the parent must be greater than that normally associated with common ownership and directorship.'" *PHC-Minden, L.P.*, 235 S.W.3d at 172-73 (quoting *Hargrave*, 710 F.2d at 1160). "[T]he evidence must show that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice." *BMC Software Belg., N.V.*, 83 S.W.3d at 799 (citations omitted). We must examine all relevant facts and circumstances surrounding the operations of the parent and subsidiary to determine whether two separate and distinct corporate entities exist. *PHC-Minden, L.P.*, 235 S.W.3d at 173 (quoting *Hargrave*, 710 F.2d at 1160).

In determining whether a parent operates a subsidiary's facility, the United States Supreme Court has explained that "a participation-and-control test looking to the parent's supervision over the subsidiary, especially one that assumes that dual officers always act on behalf of the parent, cannot be used to identify operation of a facility[.]" *Bestfoods*, 524 U.S. at 70-71. The Supreme Court noted that "when the parent operates the facility in the stead of its subsidiary or alongside

16

the subsidiary in some sort of joint venture[,]" "a dual officer or director might depart so far from the norms of parental influence exercised through dual officeholding as to serve the parent, even when ostensibly acting on behalf of the subsidiary in operating the facility." *Id.* at 71 (citations omitted). Since "[a]ctivities that involve the facility but which are consistent with the parent's investor status, such as monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures[]" are insufficient to show the parent operated the facility, the critical question is "whether, in degree and detail, actions directed to the facility by an agent of the parent alone are eccentric under accepted norms of parental oversight of a subsidiary's facility." *Id.* at 72 citations omitted). Thus, "acts of direct operation . . . must necessarily be distinguished from the interference that stems from the normal relationship between parent and subsidiary." *Id.* at 71.

Jurisdiction over Appellants

In his brief and at oral argument, Appellee points to Appellants' payment of one invoice to Biehl, Appellee's employer, on behalf of the prior owners as ratification of the prior acts of the prior owners and acceptance of liability for services rendered. According to Appellee, Appellants made this payment to maintain an ongoing business relationship with Biehl. Appellee argues that this payment ratified the contractual relationship between Fortune Haumea, the

17

previous owner of the AUDAX, and Biehl and demonstrates Appellants' consent to personal jurisdiction. Appellee further argues that the single act of paying an invoice relates to an ongoing relationship between Fortune Haumea and Jefferson County, Texas.

Appellee also argues that email exchanges between Biehl and Fortune Haumea, informed Biehl of the "new company name" and not the new company and all the companies' use of Red Box Energy Services, as well as the same domain for emails, indicate that all the Red Box companies are intertwined. Therefore, according to Appellee, Appellants are the alter ego of the prior owner and should be treated as one company. Appellee says that this is demonstrated because Appellants have failed to observe corporate formalities, commingled finances, used the same email address, and operated out of the same physical address. Appellee argues that this demonstrates how the Appellants should be considered the alter ego of Fortune Haumea, which was the prior owner/operator.

In their brief and at oral argument, Appellants argue the jurisdictional contacts of the prior owners of the AUDAX cannot be attributed to Appellants. While Appellants acknowledge the alter ego exception, they argue that the record is devoid of evidence that either the Appellants or the prior owners controlled the internal business operations and affairs of the other. Appellants further argue that they had no contacts with Texas at the time of or prior to Appellee's alleged

18

accident in April 2021 that would subject either company to the specific jurisdiction of the State. Appellants argue that Appellee's sole evidence, an invoice made out for payment by "Red Box Energy Services" does not prove that Red Box Energy Services is Appellant Red Box Energy Service Pte. Ltd., a defendant in this lawsuit. Furthermore, even if the payment by Red Box Energy Services is attributed to Appellants, the payment is not directly related to Appellee's accident, as required to invoke specific jurisdiction.

In determining whether the trial court has specific jurisdiction, we examine the Appellants' purposeful conduct and contacts with Texas, rather than another's conduct and contacts. *See Walden*, 571 U.S. at 291. Specific jurisdiction is "case-linked" and "depends on an 'affiliation between the forum and the underlying controversy[.]'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting Arthur T. von Mehren & Donald T. Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv. L. Rev. 1121, 1136 (1966)); *see also Moncrief Oil Int'l Inc.*, 414 S.W.3d at 150 ("[S]pecific jurisdiction exists when the cause of action arises from or is related to purposeful activities in the state."). Appellee's allegations that Texas has specific jurisdiction over Appellants focuses on Appellants' payment of at least one invoice to Appellee's employer, Biehl. Here, although Appellants acknowledge that the invoice payment was for maintaining a future business relationship, there is no other evidence of any other

19

conduct or contact with Texas. *See Walden*, 571 U.S. at 291. Nor is there evidence that this litigation resulted from alleged injuries that arose out of or relates to Appellants' payment of the invoice to Biehl. *See Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 774 (Tex. 1995). In his Second Amended Petition, Appellee alleges that he was injured when he "tripped over a piece of steel, breaking his hip, injuring his knee, and suffering corresponding injury and pain." Appellee's response to Appellants' Special Appearance and Appellate Brief are void of any details that Appellants' payment to Biehl relates to Appellee's injury in any way. *See Moki Mac River Expeditions*, 221 S.W.3d at 576 (requiring the nonresident defendant to have minimum contact with Texas by purposefully availing himself of the privilege of conducting business in Texas and requiring the nonresident defendant's liability to have arisen from or be related to those contacts). We conclude the evidence fails to show that Appellants purposely availed themselves of the privilege of conducting business in Texas at the time of the accident in question. The single payment Appellants subsequently made to Biehl does not establish sufficient minimum contacts to establish jurisdiction in Texas. Further, there is no evidence of constructive fraud, actual fraud, or criminal activity that would justify disregarding the corporate structures under an alter ego theory in this case. *See SSP Partners*, 275 S.W.3d at 455 (stating such abuse is necessary before disregarding the existence of a corporation as a separate entity).

**Conclusion**

Having concluded the trial court does not have general or specific jurisdiction over Appellants, we further conclude the trial court erred in denying the Appellants' special appearances. Accordingly, we reverse the trial court's order denying Red Box Energy Services Pte. Ltd.'s and RBES B.V.'s special appearances and render the judgment the trial court should have rendered, dismissing Plaintiff's/Appellee's claims against these Appellants for lack of personal jurisdiction. *See* Tex. R. App. P. 43.2(c).

REVERESED AND RENDERED.

JAY WRIGHT
Justice

Submitted on October 17, 2024
Opinion Delivered January 23, 2025

Before Golemon, C.J., Johnson and Wright, JJ.

21