ACCEPTED
14-15-00517-cv
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
9/21/2015 8:38:30 AM
CHRISTOPHER PRINE
CLERK

No. 14-15-00517-CV

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
9/21/2015 8:38:30 AM
CHRISTOPHER A. PRINE
Clerk

IN THE COURT OF APPEALS
FOR THE
FOURTEENTH COURT OF APPEALS DISTRICT OF TEXAS

ROTENCO, S.A. DE C.V.,
APPELLANT,

V.

OSCAR PULIDO, INDIVIDUALLY AND D/B/A INTERNATIONAL INDUSTRIAL SUPPLIERS CO., SURTIND, INC., AND SURTIND IMP. & EXP., S.A. DE C.V.,
APPELLEES.

## REPLY BRIEF OF APPELLANT
## ROTENCO, S.A. DE C.V.

JEFFREY HILLER
STATE BAR NO. 00790883
CACHEAUX CAVAZOS & NEWTON LLP
333 CONVENT STREET
SAN ANTONIO, TEXAS 78205
(210) 222-1642– PHONE
(210) 222-2453– FAX
JHILLER@CCN-LAW.COM

BETH WATKINS
STATE BAR NO. 24037675
SHANNON K. DUNN
STATE BAR NO. 24074162
LAW OFFICE OF BETH WATKINS
926 CHULIE DRIVE
SAN ANTONIO, TEXAS 78216
(210) 225-6666– PHONE
(210) 225-2300– FAX
BETH.WATKINS@WATKINSAPPEALS.COM
SHANNON.DUNN@WATKINSAPPEALS.COM

ATTORNEYS FOR APPELLANT
ORAL ARGUMENT CONDITIONALLY REQUESTED

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

RESPONSE TO APPELLEE'S STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . .  1

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

ARGUMENT AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

I.  SURTIND IMPORT & EXPORT DOES NOT DISPUTE THAT IT MET WITH
ROTENCO IN HOUSTON ON MANY OCCASIONS . . . . . . . . . . . . . . . . . . . . . 5

II.  SURTIND IMPORT & EXPORT'S CONTRACT WITH INTERNATIONAL,
STANDING ALONE, IS SUFFICIENT TO SUPPORT TEXAS'S JURISDICTION . . . . 6

    A.  Surtind Import & Export's Own Brief Essentially Admits That It
Did Business In Texas As A Matter Of Law . . . . . . . . . . . . . . . . . .  6

    B.  Surtind Import & Export Controlled The Progress Of This
Business Deal From Beginning To End, And It Did So In Texas
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

III.  VELASQUEZ'S AFFIDAVIT—THE ONLY EVIDENCE SURTIND IMPORT &
EXPORT PRESENTED IN SUPPORT OF ITS SPECIAL APPEARANCE—WAS
NOT LEGALLY OR FACTUALLY SUFFICIENT TO NEGATE ROTENCO'S
ASSERTION OF SPECIFIC JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . .  14

CONCLUSION AND PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

CASES                                                                              PAGE

*Brownlee v. Brownlee*, 665 S.W.2d 111 (Tex. 1984) . . . . . . . . . . . . . . . . . .   17, 18

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) . . . . . . . . . . . . . . . . . .   16

*Harbour Heights Development, Inc. v. Seaback*, 596 S.W.2d 296 (Tex. Civ.
App.–Houston [14th Dist.] 1980, no writ) . . . . . . . . . . . . . . . . . . . . . . .   17

*Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408 (1984) . . . . . . . . .  7

*Jackson v. Kincaid*, 122 S.W.3d 440 (Tex. App.–Corpus Christi 2003, pet.
granted, judgm't vacated w.r.m.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

*Jackson v. Thweatt*, 883 S.W.2d 171 (Tex. 1994) . . . . . . . . . . . . . . . . . . . . . . .  2

*Lippincott v. Whisenhunt*, 462 S.W.3d 507 (Tex. 2015) . . . . . . . . . . . . . . . . .   8, 9

*Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142 (Tex. 2013)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15, 16, 17

*Navasota Res., Ltd. v. Heep Petroleum, Inc.*, 212 S.W.3d 463 (Tex.
App.–Austin 2006, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

*PT Intermediate Holding, Inc. v. LMS Consulting, LLC*, No. 04-14-00827-CV,
2015 Tex. App. LEXIS 9669, at *20-21 (Tex. App.–San Antonio Sept.
16, 2015, no pet. h.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

*Rattner v. Contos*, 293 S.W.3d 655 (Tex. App.–San Antonio 2009, no pet.)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5, 7, 13, 14, 15, 18

*Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333 (Tex. 2009)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13, 16

*Southtex 66 Pipeline Co. v. Spoor*, 238 S.W.3d 538 (Tex. App.–Houston [14th Dist.] 2007, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

*Spir Star AG v. Kimich*, 310 S.W.3d 868 (Tex. 2010) . . . . . . . . . . . . . . . . . . . .  13

*Transportacion Especial Autorizada, S.A. de C.V. v. Seguros Comercial Am., S.A. de C.V.*, 978 S.W.2d 716 (Tex. App.–Austin 1998, no writ) . . . . . . .  7

*Urban v. Barker*, No. 14-06-00387-CV, 2007 Tex. App. LEXIS 1633 (Tex. App.–Houston [14th Dist.] March 6, 2007, no pet.) . . . . . . . . . . . . . . . .  17

## STATUTES AND RULES

Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (Lexis 2015) . . . . . . .  7, 8, 9, 14, 17

Tex. R. Civ. P. 120a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17, 18

Tex. R. Civ. P. 166a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

## RESPONSE TO APPELLEE'S STATEMENT OF THE FACTS

Surtind Import & Export has presented this Court with a list of facts that are allegedly "undisputed by [Rotenco]." Br. of Appellee at 4-7. However, a number of the facts in Surtind Import & Export's list are not now and have never been "undisputed," and this Court should not treat them as such during its review of the trial court's grant of Surtind Import & Export's special appearance.

Surtind Import & Export claims it is undisputed that "Forum Oilfield Technologies, Inc. ("Forum") is a Louisiana corporation[.]" Br. of Appellee at 5. This is not true. The lease agreement between Forum and International identifies Forum as "a corporation organized under the laws of the State of Texas whose permanent mailing address is" in Houston, Texas. CR 9. Moreover, Forum's Senior Vice President and General Counsel, James McCulloch, works out of Forum's Houston office. CR 183; CR 190-92; CR 195. At his office in Houston, McCulloch received emails from both International and Surtind Import & Export about Rotenco's lease of the EDRs. CR 183; CR 190-92; CR 195. This is why Rotenco referred to Forum as a Texas company throughout its opening brief—because the record shows that Forum **is** a Texas company, and that Surtind Import & Export did business with it in Texas. *Compare* CR 9, *and* CR 183, *and* CR 190-92, *and* CR 195, *with* Br. of Appellant at x, 12, 17, 18.

Surtind Import & Export also alleges as an "undisputed" fact that it "was not a party to the Lease Agreement."[1] Br. of Appellee at 5. But this fact is not even undisputed within Surtind Import & Export's own brief. Just one page after it claims it was not a party to the lease agreement, Surtind Import & Export insists that it "was unaware of Forum's assignment of the Lease Agreement to Rotenco and did not approve it." Br. of Appellee at 6-7. Surtind Import & Export evidently believes that Forum's assignment of the lease to Rotenco was improper because Surtind Import & Export was not given the chance to approve it. *See id.* Surtind Import & Export does not explain, however, why it believes it should have been asked to "approve" the assignment of a contract to which it was allegedly not a party. *Compare id.*, *with* Br. of Appellee at 5 ("Surtind [Import & Export] was not a party to the Lease Agreement."). Furthermore, while it is true that Surtind Import & Export is not actually named as a signatory in the lease agreement, it is also true that Surtind Import & Export voluntarily reached out to Forum and met with Forum **and Rotenco** in Texas to plan and negotiate what would eventually become that contract and the rest of the business deal that forms the basis for this lawsuit. CR 109; CR 150; CR 152-53.

---

[1]Surtind Import & Export also contends that Rotenco is not party to the lease agreement. Br. of Appellee at 7, 9. But because Forum assigned its rights under that lease to Rotenco, Surtind Import & Export's complaints that Rotenco "was not a party to the Lease Agreement" are of no consequence to even the merits of this action, much less the narrower jurisdictional question that is before this Court. *Compare* Br. of Appellee at 7, 9, *with Jackson v. Thweatt*, 883 S.W.2d 171, 175 (Tex. 1994) ("[A]n assignee receives the full rights of the assignor[.]").

Surtind Import & Export further asserts that "[it] and Rotenco executed an equipment lease agreement in Mexico and not Texas." Br. of Appellee at 6. It does not deny, however, that it met with Rotenco in Texas to negotiate the contract and plan the business deal as a whole. CR 152-53. It also ignores that Rotenco's lawsuit against it does not arise out of the contract executed in Mexico, but instead out of the business deal as a whole. *See* CR 37-41; *see also* CR 40 (alleging that "there is such unity between [Surtind Import & Export and its sister entities Surtind, Inc. and International] that the separateness of the single corporation has ceased, and holding only a single corporation liable would result in injustice").

Finally, Surtind Import & Export contends that it "does not have a place of business, offices, bank accounts[,] or employees in Texas." Br. of Appellee at 7. This assertion is contrary to its own website, which explicitly referred to its "Houston office" and named two employees in that office who used "@surtindsa.com" email addresses. CR 237. Furthermore, Surtind Import & Export does not deny Pulido's testimony that "the great majority" of International's work involves acting as "the U.S. arm of" Surtind Import & Export. CR 233. Nor does it deny that during this business deal, International essentially acted as a shell that allowed Surtind Import & Export to pass money and equipment into and out of Texas. CR 231; CR 138-44; CR 222-23.

## SUMMARY OF THE ARGUMENT

When it organized and entered into the business deal at the center of this lawsuit, Surtind Import & Export's own website proudly proclaimed that it had an office in Houston, Texas. It met in Texas with two Texas companies and Rotenco to organize and negotiate the transfer of the EDRs to Rotenco. It did business in Texas as a matter of law by entering into a contract with one of those Texas companies—International—that called for International to perform its end of that contract in Texas. It admitted in its discovery responses that the other Texas company—Forum—had always been told it was dealing directly with Surtind Import & Export. It used International—its "U.S. arm"—to funnel money to Forum through Texas and to funnel equipment from Forum out of Texas. Finally, when its relationship with Rotenco faltered, it reached out to Forum in Texas for help.

But now that all of those voluntary, purposeful contacts with Texas have come home to roost, Surtind Import & Export wants this Court to believe that it has absolutely no connection to Texas and that it would offend due process to subject it to suit in this State. This Court should reject this assertion for the charade it is and reverse the trial court's order granting Surtind Import & Export's special appearance.

**I.** **SURTIND IMPORT & EXPORT DOES NOT DISPUTE THAT IT MET WITH ROTENCO IN HOUSTON ON MANY OCCASIONS.**

Throughout its brief, Surtind Import & Export insists that "all but one" meeting with Forum took place in Louisiana. Br. of Appellee at 5, 7. This argument ignores, however, that "the minimum-contacts analysis is focused on the quality and nature of the defendant's contacts, rather than their number." *Rattner v. Contos*, 293 S.W.3d 655, 660 (Tex. App.–San Antonio 2009, no pet.) (internal quotation marks omitted). Because the record shows that Surtind Import & Export's meeting in Houston with Forum is what set the business deal underlying this lawsuit into motion, the "quality and nature" of that contact with Texas supports Texas's jurisdiction over Surtind Import & Export. CR 150 (Forum met with Velasquez in Houston); CR 225-26 ("[p]art of the discussion that took place in Houston" was Velasquez's agreement "on behalf of Surtind Import and Export" to import the EDRs into Mexico); CR 74 (Forum was told it was dealing directly with Surtind Import & Export throughout the negotiations); *Rattner*, 293 S.W.3d at 660-61.

Furthermore, Surtind Import & Export's brief studiously ignores the evidence that it took part in "[n]umerous negotiations, communications and meetings" **with Rotenco** in Houston. CR 152-53; *see also* Br. of Appellant at 7. As noted in Rotenco's

opening brief, a nonresident defendant "purposefully avail[s] itself of the benefits of doing business in Texas" by sending "an authorized representative to Texas to solicit and negotiate business deals." *Navasota Res., Ltd. v. Heep Petroleum, Inc.*, 212 S.W.3d 463, 470 (Tex. App.–Austin 2006, no pet.). Here, the evidence shows that Surtind Import & Export did just that. CR 152-53. For this reason alone, the Court should reverse the trial court's order granting Surtind Import & Export's special appearance. *Navasota Res.*, 212 S.W.3d at 470.

## II. SURTIND IMPORT & EXPORT'S CONTRACT WITH INTERNATIONAL, STANDING ALONE, IS SUFFICIENT TO SUPPORT TEXAS'S JURISDICTION.

### A. Surtind Import & Export's Own Brief Essentially Admits That It Did Business In Texas As A Matter Of Law.

Surtind Import & Export's brief admits that "International [l]eased [the EDRs] to Surtind [Import & Export]." Br. of Appellee at 12. Its brief also unambiguously states that "International Industrial Suppliers [is] a Texas corporation" and "[t]here is no question that International Industrial Suppliers is the assumed name of Surtind, Inc., a Texas corporation." Br. of Appellee at 8. Finally, Surtind Import & Export's brief admits that International's agreement with Surtind Import & Export required it to ship the EDRs from Houston, Texas, to Laredo, Texas. Br. of Appellee at 9; *see also* CR 138-44 (invoices showing International sold equipment to Surtind Import &

Export and shipped the equipment through a freight forwarder in Laredo).

As Rotenco pointed out in its opening brief, a nonresident defendant does business in Texas as a matter of law "if the nonresident . . . contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state." Tex. Civ. Prac. & Rem. Code Ann. § 17.042(1) (Lexis 2015). Surtind Import & Export's brief unequivocally shows that it did just that by entering into a contract with a Texas resident—International—that required International to perform its end of the contract in Texas. Br. of Appellee at 8, 9, 12. That contact with Texas is an integral part of this lawsuit—after all, if the International/Surtind Import & Export contract did not exist, Rotenco never would have received the EDRs in question. CR 109; *see also* CR 150 (Surtind Import & Export, acting through Velasquez, told Forum that it devised the three-contract setup for the benefit of "a client of theirs in Mexico"—*i.e.*, Rotenco). Rotenco's lawsuit therefore "arises out of or relates to" Surtind Import & Export's admitted contract with International. *See Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408, 414 n.8 (1984); *Rattner*, 293 S.W.3d at 661. As a result, Surtind Import & Export's contacts with Texas were sufficient to support Texas's jurisdiction over it as a matter of law. *Compare* Tex. Civ. Prac. & Rem. Code § 17.042(1), *with* Br. of Appellee at 8, 9, 12; *Transportacion Especial Autorizada, S.A. de C.V. v. Seguros Comercial Am., S.A. de C.V.*, 978 S.W.2d

716, 721 (Tex. App.–Austin 1998, no writ).

Surtind Import & Export insists, however, that the contract between it and International "expressly states that it was signed in Mexico." Br. of Appellee at 13. The only citation Surtind Import & Export provides to support this assertion is a document that is written in Spanish and for which no English translation appears in the record. *Id.* (citing CR 180). But this statement, even if true, is of no consequence to the question before this Court. This is because the Legislature has unambiguously directed that a nonresident defendant does business in Texas as a matter of law "if the nonresident . . . contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state." Tex. Civ. Prac. & Rem. Code § 17.042(1). Nothing in that plain language identifies the site of the contract's execution as a relevant consideration, and Surtind Import & Export has not provided any authority to the contrary. *Compare id.*, *with* Br. of Appellee at 13.

Surtind Import & Export cannot provide any such authority, because the rules of statutory construction require this Court to presume that "the Legislature included each word in the statute for a purpose and that words not included were purposefully omitted." *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015). Here, the Legislature's language is clear—since Surtind Import & Export contracted with a Texas resident and part of that contract was to be performed in Texas, Surtind Import

& Export did business in Texas, no matter where the contract was signed. Tex. Civ. Prac. & Rem. Code § 17.042(1); *see also* Br. of Appellee at 8, 9, 12. By insisting that the site of the contract's execution has any relevance to the jurisdictional question at issue here, Surtind Import & Export has asked this Court to apply a consideration that does not exist in the plain language of the statute. *Compare* Tex. Civ. Prac. & Rem. Code § 17.042(1), *with* Br. of Appellee at 13. This Court must reject Surtind Import & Export's implicit invitation to "judicially amend a statute by adding words that are not contained in the language of the statute." *Lippincott*, 462 S.W.3d at 508.

B.      **Surtind Import & Export Controlled The Progress Of This Business Deal From Beginning To End, And It Did So In Texas.**

Surtind Import & Export argues that "[t]he relationship between Surtind [Import & Export] and International does not establish jurisdiction in this case" because "[t]here is no pleading of jurisdiction over Surtind [Import & Export] on the basis of alter ego liability." Br. of Appellee at 16. But this statement is flat wrong. Rotenco's live pleading contains the following paragraph under the heading "Agency/Individual Liability/Joint Liability/Alter Ego and Piercing of Corporate Veil":

> Additionally, Plaintiff would show that the Surtind Defendants corporate veil, both jurisdictionally and for liability, should be disregarded as to Defendants and that there is such unity between Defendants that the separateness of the single corporation has ceased, and holding only a single corporation liable would result in injustice.

CR 40 (highlighting added). This allegation in Rotenco's live pleading plainly contends that all of the entities owned by Velasquez are so closely linked that the trial court should have treated them as one unit for jurisdictional purposes. *See id.* And despite Surtind Import & Export's protestations to the contrary, this allegation finds ample support in the evidence. *See* CR 233 (International acts as the "U.S. arm of" Surtind Import & Export); CR 231 (all of the money International received from Surtind Import & Export for its "services" in facilitating the shipment of the EDRs went directly to Forum); CR 198 (Velasquez thanked Forum's general counsel "on behalf of [International] and Surtind Imp. [*sic*] & Export S.A. de C.V." for "taking the time to listen to the problem we have with Rotenco"); CR 225-26 (Velasquez negotiated the deal on behalf of both International and Surtind Import & Export). In fact, as noted in Rotenco's opening brief, Surtind Import & Export agreed in its responses to discovery that Forum was always told it was dealing directly with Surtind Import & Export "[w]ith regard to the Lease Agreement" with International. CR 74.

The Fourth Court of Appeals recently held that similar circumstances were sufficient to impute the activities of a Texas defendant to its nonresident parent for the purpose of establishing minimum contacts. *See PT Intermediate Holding, Inc. v. LMS Consulting, LLC*, No. 04-14-00827-CV, 2015 Tex. App. LEXIS 9669, at *20-21 (Tex. App.–San Antonio Sept. 16, 2015, no pet. h.).

But even if the evidence did not support a conclusion that International was Surtind Import & Export's alter ego, Surtind Import & Export's own independent contacts with Texas support jurisdiction here. Despite Surtind Import & Export's strenuous efforts to convince this Court otherwise, this lawsuit does not arise out of a single, isolated contract between Rotenco and Surtind Import & Export. *See, e.g.*, Br. of Appellee at 17. As Rotenco pointed out in its opening brief, the dispute at the center of this case involves three interconnected contracts—not just one contract standing alone—and Surtind Import & Export took the lead in negotiating, executing, and maintaining all three:

- Forum was specifically told from the very beginning that it was dealing directly with Surtind Import & Export. CR 74.

- Velasquez and Pulido voluntarily reached out to Forum, a Texas company, to set this business deal in motion. CR 102; CR 150; CR 219.

- Velasquez and Pulido both met with a Forum representative in Houston to discuss the proposed contracts. CR 150; CR 225.

- Velasquez and Pulido both met with Rotenco "many times" in Houston to discuss the proposed contracts. CR 152-53.

- Velasquez and Pulido told Forum's representative they came up with the plan involving the three contracts to benefit "a client of theirs in Mexico"—*i.e.*, Rotenco. CR 150; CR 225.

- Velasquez negotiated the deal as a whole on behalf of both Surtind Import & Export and International. CR 225-26.

- Velasquez used his Surtind Import & Export email account and signature to communicate with Forum about the "agreements between Forum and [International] signed by us and you." CR 193.

- All of the money Surtind Import and Export sent to International for its "services" in facilitating the shipment of the EDRs went directly to Forum. CR 231.

- Surtind Import & Export's "International Purchases" representative, Adriana Velasquez Rendon, used an International email address to send Forum a message "on behalf of [International] **and** Surtind Imp. & Exp. S.A. de C.V." promising to "expedite the return of the equipment and the payment of the rent" from Rotenco. CR 197-99 (emphasis added).

- When Surtind Import & Export's relationship with Rotenco cooled, it reached out to Forum in Houston for assistance. CR 190-92; CR 195; CR 197-98.

In other words, even though the record plainly shows that it took special care to ensure it had its finger in all of the relevant pies, Surtind Import & Export would now like this Court to believe it was not even in the kitchen. *Compare* Br. of Appellee, *with* CR 74 (Forum was specifically told it was dealing with Surtind Import & Export), *and* CR

150 (Forum met with both Velasquez and Pulido in Houston and received business cards from both of them), *and* CR 152-53 (Rotenco met "many times" with Surtind Import & Export "at its Houston office"), *and* CR 197-99 (Velasquez emailed Forum on behalf of both International and Surtind Import & Export), *and* CR 225-26 (Velasquez negotiated on behalf of both International and Surtind Import & Export). This Court should refuse to do so. *See, e.g.*, *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 339-40 (Tex. 2009).

"A court has specific jurisdiction over a defendant if its alleged liability arises from or is related to an activity conducted within the forum." *Spir Star AG v. Kimich*, 310 S.W.3d 868, 873 (Tex. 2010). Rotenco is not attempting to hale Surtind Import & Export into a Texas court based on the unilateral actions of an unrelated third party or even—as Surtind Import & Export claims in its brief—based on "the acts of a subsidiary company." *See Retamco*, 278 S.W.3d at 340; Br. of Appellee at 17-18. To the contrary, Rotenco's claims against Surtind Import & Export arise out of a business deal that Surtind Import & Export planned, nurtured, and cultivated in Texas, with Texas residents, on its own behalf. CR 109; CR 150; CR 152-53; CR 225-26; *Rattner*, 293 S.W.3d at 660-61. Surtind Import & Export has all but admitted that it purposefully availed itself of the privilege of conducting activities in Texas to ensure the success of this deal. Br. of Appellee at 8, 9, 12 (admitting that Surtind Import &

Export contracted with International, a Texas resident); Tex. Civ. Prac. & Rem. Code § 17.042(1). Because even Surtind Import & Export agrees that it did business in Texas as part of the business deal that led to Rotenco's lawsuit, the trial court should have denied its special appearance. *Rattner*, 293 S.W.3d at 660-61.

### III. VELASQUEZ'S AFFIDAVIT—THE ONLY EVIDENCE SURTIND IMPORT & EXPORT PRESENTED IN SUPPORT OF ITS SPECIAL APPEARANCE—WAS NOT FACTUALLY OR LEGALLY SUFFICIENT TO NEGATE ROTENCO'S ASSERTION OF SPECIFIC JURISDICTION.

According to Surtind Import & Export, Velasquez's unsupported, self-serving affidavit presents more than a scintilla of evidence to support the trial court's order granting Surtind Import & Export's special appearance. Br. of Appellee at 15-16. The first page of Velasquez's affidavit identifies him as the president of Surtind Import & Export and gives a brief overview of the facts of this case. CR 257. There is no specific discussion of Surtind Import & Export's contacts with Texas on the first page of Velasquez's affidavit. *See id.*

On the second page of his affidavit, however, Velasquez told the trial court that:

- Surtind Import & Export "does not engage in business in Texas";

- Surtind Import & Export "does not have a place of business, offices, bank accounts[,] or employees in Texas";

- Rotenco's claims "did not arise from any purposeful act or transaction [by Surtind Import & Export] in Texas";

- Surtind Import & Export "has no substantial connection with Texas arising from any action or conduct purposefully directed toward Texas, [Rotenco']s claims do not arise from and are not related to any activity conducted by [Surtind Import & Export] in Texas, and [Surtind Import & Export] has no continuing and systematic contacts in Texas."

CR 258. Only one of those statements—Velasquez's assertion that Surtind Import & Export "does not have a place of business, offices, bank accounts[,] or employees in Texas"—is even arguably a factual contention, and it is completely contrary to the rest of the evidence. *See* CR 237 (Surtind Import & Export's own website explicitly referred to its "Houston office" and named two employees in that office who used "@surtindsa.com" email addresses); CR 233 (International acts as the "U.S. arm of" Surtind Import & Export); CR 235 (Velasquez's business card lists both a Mexican address and a Houston address). The Court should therefore reject Surtind Import & Export's claim that it "does not have a place of business, offices, bank accounts[,] or employees in Texas" because it is contrary to the great weight and preponderance of the evidence. *Rattner*, 293 S.W.3d at 658.

But even if this Court accepts this factual contention, it is only sufficient to challenge an assertion that Surtind Import & Export is subject to **general** jurisdiction based on "continuous and systematic contacts" with Texas. *See Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013). It does not in any way challenge,

let alone negate, the **<u>specific</u>** jurisdiction assertions that Rotenco actually raised in its petition by alleging that "the contract at issue was negotiated, executed, and performable in Harris County, Texas."[2] CR 38; *see also Moncrief*, 414 S.W.3d at 150. As a result, Surtind Import & Export's insistence that it "does not have a place of business, offices, bank accounts[,] or employees in Texas" is not enough to support the trial court's decision to grant Surtind Import & Export's special appearance. *Moncrief*, 414 S.W.3d at 150; *Retamco*, 278 S.W.3d at 337.

The other "facts" in Velasquez's affidavit are not really facts at all. CR 258. Instead, Velasquez's affidavit simply recites the legal standards courts use to determine whether personal jurisdiction exists, without offering any facts to show how those standards apply in this case. *Compare id.*, *with Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985). His affidavit does not recite facts of which he has personal knowledge, only legal conclusions intended to defeat Texas's jurisdiction over his company. CR 258. Moreover, <u>nothing in Velasquez's affidavit demonstrates</u>

---

[2]Surtind Import & Export's brief contends that "Rotenco incorrectly premises jurisdiction based on tort law" because Rotenco's opening brief cited this Court's opinion in *Hoagland v. Butcher*. Br. of Appellee at 11. This argument is flawed because it ignores that committing a tort in Texas—as the defendants in *Hoagland* did—is only one of "a non-exclusive list of activities that constitute doing business" in this State. *See, e.g.*, *Jackson v. Kincaid*, 122 S.W.3d 440, 447 (Tex. App.–Corpus Christi 2003, pet. granted, judgm't vacated w.r.m.). Rotenco has always maintained that Surtind Import & Export is subject to Texas's jurisdiction because the contracts it entered into in this State and with residents of this State form the basis of this lawsuit. CR 37-44; Br. of Appellant at 11-17. Surtind Import & Export has not offered this Court any reason to limit its *Hoagland* analysis to cases that involve a tort committed in Texas. Br. of Appellee at 11.

that he is qualified to offer opinion testimony on these legal conclusions. *Cf. Southtex 66 Pipeline Co. v. Spoor*, 238 S.W.3d 538, 544 (Tex. App.–Houston [14th Dist.] 2007, pet. denied);[3] *see also Moncrief*, 414 S.W.3d at 150 (existence of personal jurisdiction is a question of law). As a result, this portion of Velasquez's affidavit consists solely of unsupported legal conclusions "and [was] therefore improper proof." *Harbour Heights Development, Inc. v. Seaback*, 596 S.W.2d 296, 297 (Tex. Civ. App.–Houston [14th Dist.] 1980, no writ). And, as noted above, one of these legal conclusions—that Surtind Import & Export "does not engage in business in Texas"—contradicts the facts at issue here as well as the law, even under the arguments in Surtind Import & Export's own brief. *Compare* Tex. Civ. Prac. & Rem. Code § 17.042(1), *with* Br. of Appellee at 8, 9, 12. That contradiction should have caused the trial court to deny the special appearance. *See id.*

Unsupported legal conclusions like Velasquez's claim that Surtind Import & Export "has no substantial connection with Texas" and that Rotenco's claims "did not arise from any purposeful act or transaction" in Texas are no evidence at all and cannot support the trial court's order granting Surtind Import & Export's special

---

[3]*Southtex* is a summary judgment case. *Southtex*, 238 S.W.3d at 544. Because the rules regarding special appearance affidavits and summary judgment affidavits are very similar, this Court has previously relied on summary judgment cases to evaluate the sufficiency of special appearance affidavits. *See Urban v. Barker*, No. 14-06-00387-CV, 2007 Tex. App. LEXIS 1633, at *5-6 (Tex. App.–Houston [14th Dist.] March 6, 2007, no pet.) (citing *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984)); *compare* Tex. R. Civ. P. 120a(3), *with* Tex. R. Civ. P. 166a(f).

appearance. Tex. R. Civ. P. 120a(3) (special appearance affidavits "shall set forth specific facts as would be admissible in evidence"); *cf. Brownlee*, 665 S.W.2d at 112. Despite Surtind Import & Export's claims to the contrary in this Court, Velasquez's affidavit failed to present more than a scintilla of evidence to even challenge Rotenco's jurisdictional assertions, much less to negate them. *See id.* As a result, this Court should reverse the trial court's order granting Surtind Import & Export's special appearance. *Cf. Rattner*, 293 S.W.3d at 662.

## CONCLUSION AND PRAYER

Surtind Import & Export voluntarily came to Texas to organize a business deal. CR 150. By its own admission, it contracted with Texas residents to do so. Br. of Appellee at 8, 9, 12. It met with Rotenco in Texas to negotiate that business deal. CR 152-53. It reached out to a Texas resident for help when its contractual relationship with Rotenco started to fall apart. CR 190-92; CR 195; CR 197-98. But now that Rotenco has sued it in Texas, it would like to wash it hands of all of these contacts with Texas and declare that it never intended to subject itself to Texas's jurisdiction. But because the record amply demonstrates that Surtind Import & Export's own voluntary, purposeful actions in Texas form the basis for this lawsuit, this Court should reverse the trial court's decision to allow it to do so.

For these reasons and the reasons expressed in Rotenco's opening brief,

Appellant Rotenco, S.A. de C.V., prays that this Court will reverse the trial court's order granting Appellee Surtind Imp. & Exp., S.A. de C.V.'s special appearance and remand this cause for a trial on the merits on Appellant's claims against all of the Appellees. Appellant also prays for any further relief to which it may be entitled in law or equity.

Respectfully submitted,

/s/ *Shannon K. Dunn*
Beth Watkins
Texas Bar No. 24037675
Shannon K. Dunn
Texas Bar No. 24074162
LAW OFFICE OF BETH WATKINS
926 Chulie Drive
San Antonio, Texas 78216
(210) 225-6666– phone
(210) 225-2300– fax
**Attorneys for Appellant**
**Rotenco, S.A. de C.V.**

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2015, a true and correct copy of this brief was forwarded in accordance with rule 9.5 of the Texas Rules of Appellate Procedure to the following counsel of record:

Yocel Alonso
130 Industrial Boulevard, Suite 110
Post Office Box 45
Sugar Land, Texas 77487
yocelaw@aol.com

   /s/ *Shannon K. Dunn*   
Shannon K. Dunn
Attorney for Appellant

## CERTIFICATE OF COMPLIANCE

Pursuant to Tex. R. App. P. 9.4(i)(3), undersigned counsel certifies that this brief complies with the type-volume limitations of Tex. R. App. P. 9.4(i)(2).

1. Exclusive of the portions exempted by Tex. R. App. P. 9.4(i)(1), this brief contains 4,461 words printed in a proportionally spaced typeface.

2. This brief is printed in a proportionally spaced, serif typeface using Times New Roman 14 point font in text and Times New Roman 12 point font in footnotes produced by Corel WordPerfect X6 software and converted to PDF format by Acrobat Distiller 10.1.3.

/s/ *Shannon K. Dunn*
Shannon K. Dunn
COUNSEL FOR APPELLANT
ROTENCO, S.A. DE C.V.