

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

## No. 02-23-00028-CV

_____

ONCO FILTRATION, INC., Appellant

V.

PEDESTAL SVN INVESTMENTS, LLC, Appellee

_____

On Appeal from the 442nd District Court
Denton County, Texas
Trial Court No. 21-6505-442

_____

Before Sudderth, C.J.; Kerr, J.; and Fahey, J.[1]
Memorandum Opinion by Visiting Judge Megan Fahey, Sitting by Assignment

_____

[1]The Honorable Megan Fahey, Judge of the 348th District Court of Tarrant County, sitting by assignment of the Chief Justice of the Texas Supreme Court pursuant to Section 74.003(h) of the Government Code. *See* Tex. Gov't Code Ann. § 74.003(h).

## MEMORANDUM OPINION

Appellant ONCO Filtration, Inc. (ONCO) appeals from the trial court's order denying its special appearance. In two issues, ONCO argues that the trial court erred by denying the special appearance on the basis of general jurisdiction and specific jurisdiction. Because we conclude that the trial court did not err by denying the special appearance, we affirm.

## I. BACKGROUND

Appellee Pedestal SVN Investments, LLC (Pedestal) invested $2.5 million in SVN Med LLC (SVN) in exchange for an agreement that the manager of Pedestal would be employed as the President of Global Services at SVN and would serve on SVN's board of directors. The investment was in the form of three promissory notes. The manager of Pedestal was terminated from SVN within thirty days of his employment and was not given a seat on the board of SVN. Pedestal requested the return of its investment, but SVN did not return the money.

After the manager of Pedestal was terminated from SVN, the SVN members sold their membership interests to NVS Med, Inc. (NVS). Pursuant to the sale, SVN assigned the SVN Noteholder's Notes—including Pedestal's notes—to NVS. The assignment of the notes was made without the consent of Pedestal.

SVN Med Therapeutics, LLC (SVNMT) was a wholly owned subsidiary of SVN with its business purpose being the acquisition of intellectual property from another company. SVNMT held patents that were of value to SVN. ONCO was formed in

2

March 2022, and SVNMT was converted into ONCO. ONCO is now the owner of all the patents. Prior to the conversion of SVNMT to ONCO, Pedestal filed suit against SVN over the dispute concerning its investment.

After the conversion of SVNMT to ONCO, ONCO approached the NVS Noteholders about exchanging their notes to ONCO notes. To facilitate the exchange of notes, ONCO hosted three separate Zoom meetings. The Zoom meetings were led by Sumit Rai—the CEO, chairman, board director, and founder of ONCO—from his residence in Texas. Pedestal is a noteholder of NVS but was not included in the meetings. A majority of the noteholders consented to the conversion of their notes from NVS to ONCO. Because only a majority was needed for the conversion of the notes, Pedestal's consent was not required and was not given. All of Pedestal's investment is now in a note with ONCO.

Because ONCO did not exist at the time that Pedestal filed its original petition against SVN, Pedestal filed a second amended petition on August 22, 2022, naming ONCO as a defendant[2] and alleging a cause of action for money had and received. ONCO filed its special appearance on September 19, 2022 objecting to the trial court's jurisdiction and asking the trial court to dismiss the claims asserted against ONCO.

---

[2]In the second amended petition, the named defendants are SVN; Gautam Mukunda; Sumit Rai; Kim De Mora; Eden "Denny" Cahan; Chris Soviero; NVS Med, Inc.; and ONCO f/k/a SVNMT. Pedestal alleges multiple causes of action against the defendants.

Pedestal then filed a third amended petition adding a cause of action for breach of contract against ONCO. After a hearing, the trial court signed an order denying ONCO's special appearance.

## II. STANDARD OF REVIEW

In a challenge to personal jurisdiction, the plaintiff and the defendant bear shifting burdens of proof. *Old Republic Nat'l Title Ins. v. Bell*, 549 S.W.3d 550, 559 (Tex. 2018). The plaintiff bears the initial burden of pleading allegations that suffice to permit a court's exercise of personal jurisdiction over the nonresident defendant. *Id.*; *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 66 (Tex. 2016). To determine whether the plaintiff satisfied its pleading burden and to determine the basis for jurisdiction alleged by the plaintiff, a court considers the allegations in the plaintiff's petition as well as those in its response to the defendant's special appearance. *Am. Refrigeration Co. v. Tranter, Inc.*, No. 02-15-00265-CV, 2016 WL 5957018, at *3 (Tex. App.—Fort Worth Oct. 13, 2016, no pet.) (mem. op.). Once the plaintiff has met this burden, the defendant then assumes the burden of negating all potential bases for personal jurisdiction in the plaintiff's pleadings. *Searcy*, 496 S.W.3d at 66.

The ultimate question of whether a court has personal jurisdiction over a nonresident defendant is a question of law that we review de novo. *Old Republic*, 549 S.W.3d at 558. But a trial court may have to resolve fact questions before deciding the jurisdiction question. If the trial court makes findings of fact and conclusions of law in denying a special appearance, the appellant may challenge the fact findings on legal-

4

and-factual sufficiency grounds, and we review the challenged findings for both legal and factual sufficiency. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). We review challenged legal conclusions de novo to determine their correctness based on the facts. *See id.*

### III. APPLICABLE LAW

A Texas court has personal jurisdiction over a nonresident defendant when the Texas long-arm statute permits the exercise of such jurisdiction and the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees. *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149 (Tex. 2013). Because the long-arm statute reaches "as far as the federal constitutional requirements for due process will allow," a Texas court may exercise personal jurisdiction over a nonresident so long as doing so "comports with federal due[-]process limitations." *TV Azteca v. Ruiz*, 490 S.W.3d 29, 36 (Tex. 2016) (quoting *Spir Star AG v. Kimich*, 310 S.W.3d 868, 872 (Tex. 2010)). Federal due process is satisfied when (1) the defendant has established minimum contacts with the state and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413, 137 S. Ct. 1549, 1558 (2017); *TV Azteca*, 490 S.W.3d at 36.

A nonresident defendant establishes minimum contacts with a forum when it purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Moncrief Oil*, 414 S.W.3d at 150. Three principles govern our purposeful-availment analysis: (1) only the defendant's

contacts with Texas are relevant, not the unilateral activity of another party or third person; (2) the defendant's acts must be purposeful and not random, isolated, or fortuitous; and (3) the defendant must seek some benefit, advantage, or profit by availing itself of Texas's jurisdiction so that it impliedly consents to suit here. *M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co.*, 512 S.W.3d 878, 886 (Tex. 2017) (citing *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005)). Although "'physical presence in the forum' is 'a relevant contact,' it 'is not a prerequisite to jurisdiction.'" *Cornerstone Healthcare Grp. Holding, Inc. v. Nautic Mgmt. VI, L.P.*, 493 S.W.3d 65, 71 (Tex. 2016) (quoting *Walden v. Fiore*, 571 U.S. 277, 285, 134 S. Ct. 1115, 1122 (2014)).

"The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." *Retamco Operating, Inc., v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009) (quoting *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002)).

Minimum contacts can give rise to either specific or general jurisdiction. *TV Azteca*, 490 S.W.3d at 37. A court has general jurisdiction over a nonresident defendant whose affiliations with the state are so continuous and systematic as to render it essentially at home in the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 127, 134 S. Ct. 746, 754 (2014). When a court has general jurisdiction over a nonresident, it may

6

exercise jurisdiction "even if the cause of action did not arise from activities performed in the forum state." *TV Azteca*, 490 S.W.3d at 37 (quoting *Spir Star*, 310 S.W.3d at 872).

"Unlike general jurisdiction, which requires a more demanding minimum contacts analysis, specific jurisdiction may be asserted when the defendant's forum contacts are isolated or sporadic, but the plaintiff's cause of action arises out of those contacts with the state." *Spir Star*, 310 S.W.3d at 873 (citations and internal quotations omitted). To assess whether there is specific jurisdiction, we focus on the relationship among the defendant, the forum, and the litigation. *Id.* Specific jurisdiction is appropriate when (1) the defendant's contacts with Texas are purposeful, and (2) the cause of action arises from those contacts. *Id.*

Parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473, 105 S. Ct. 2174, 2182 (1985); *Moncrief Oil*, 414 S.W.3d at 151. Where individuals purposefully derive benefit from their interstate activities, it may well be unfair to allow them to escape having to account in other states for consequences that arise proximately from such activities. *Burger King*, 471 U.S. at 473–74, 105 S. Ct. at 2183.

## IV. ANALYSIS

In its first issue, ONCO argues that the trial court erred by denying its special appearance on the basis of general jurisdiction because there is no legally or factually

7

sufficient evidence that ONCO is "essentially at home" in Texas.  In its second issue, ONCO argues that the trial court erred by denying its special appearance on the basis of specific jurisdiction because there is no legally or factually sufficient evidence that supports a finding of specific jurisdiction.[3]

## A. General Jurisdiction

The trial court made the following findings of fact relevant to general jurisdiction:

> 22.  Sumit Rai has an ownership interest in NVS and is the CEO and sole director.
>
> 23.  [SVN] is managed by NVS.
>
> . . . .
>
> 25.  At the relevant time period for the Special Appearance Sumit Rai and Mr. De Mora were the only officers and board members of [ONCO].
>
> 26.  Sumit Rai is the Chief Executive Officer, Chairman, board director, founder, and an employee of ONCO.
>
> 27.  SVN Med. Therapeutics, LLC [SVNMT] was the entity that was converted into [ONCO] on March 18, 2022.
>
> . . . .
>
> 29.  Rai conducts business on behalf of [ONCO] from Texas and is a Texas resident. . . .

---

[3]In its reply brief, ONCO complains that this court should disregard any facts or assertions in Pedestal's response to its special appearance because the attached affidavit of Pedestal's attorney, Jack Lilley, does not verify the facts stated in the response. Ordinarily, an issue raised for the first time on appeal in a reply brief is waived. *Hutchison v. Pharris*, 158 S.W.3d 554, 564 (Tex. App.—Fort Worth 2005, no pet.).

Although an appellant may challenge the fact findings on legal- and factual-sufficiency grounds, ONCO does not bring a sufficiency challenge. *See BMC Software Belg.,* 83 S.W.3d at 794. In its brief, ONCO lists some of the trial court's findings, including the finding that Rai conducts business for ONCO from his home in Texas, but does not challenge the sufficiency of that finding. In its reply brief,[4] ONCO states that it is challenging the factual finding by the trial court that Rai conducts business for ONCO from his home in Texas but does not provide any legal- or factual-sufficiency analysis.

When the trial court makes findings of fact following a special appearance hearing, they are binding on this court unless challenged on appeal pursuant to ordinary sufficiency-of-the-evidence claims. *Hooks v. Carpeton Mills, Inc.,* No. 2-05-059-CV, 2005 WL 3526560, at *1 (Tex. App.—Fort Worth Dec. 22, 2005, no pet.) (mem. op.). Therefore, the trial court's finding—that Rai conducts business for ONCO from his home in Texas—is binding on this court.

ONCO argues that it is "at home" only in Delaware and Massachusetts and that those are the only states in which it is subject to general jurisdiction. According to the affidavit of Kim De Mora, ONCO is a Delaware corporation with its principal place of business located in Massachusetts. De Mora stated in his affidavit that ONCO directs

---

[4]Again, an issue raised for the first time on appeal in a reply brief is waived. *Hutchison,* 158 S.W.3d at 564.

9

its business from Massachusetts, that it has a lab in Massachusetts, and that its manufacturing and assembly equipment is in the state of Massachusetts. ONCO contends that it conducts its business from Massachusetts.

However, the evidence supports the trial court's finding that Rai conducts ONCO's business from Texas. In addition to being the founder and CEO of ONCO, Rai is an owner of NVS as well as its CEO and sole director. NVS manages SVN—which acknowledged that it conducts business in Texas—and SVN is the sole owner of ONCO. As CEO for both NVS and ONCO, Rai controlled the business affairs of both companies. *See BMC Software Belg.,* 83 S.W.3d at 799.

The "principal place of business" or the "nerve center" of the corporation "refers to the place where the corporation's high[-]level officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 80–81, 130 S. Ct. 1181, 1186 (2010) (construing the federal diversity-jurisdiction statute); *Forever Living Products Int'l, LLC v. AV Europe GmbH*, 638 S.W.3d 719, 724 (Tex. App.—Dallas 2021, pet. denied) (*Hertz* nerve-center test applies in the general-jurisdiction context.). Although the relevant period for assessing jurisdiction is only a few months,[5] during that time period Rai, on behalf of ONCO, hosted three meetings from his home in Texas to facilitate the exchange of NVS notes to ONCO.

---

[5]ONCO was formed in March 2022 and was named as a defendant in August 2022. The relevant period for assessing jurisdiction ends at the time the suit is filed. *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 169 (Tex. 2007).

In *King v. Bumble Trading, Inc.*, the court found that a corporation's principal place of business was in Texas, where the CEO resided and worked, even though documents showed that the principal executive office was located in California. 2020 WL 663741, at *2–3 (N.D. Cal. Feb. 11, 2020) (order). As in *King*, Rai resides and works from his home in Texas even though ONCO has a lab and manufacturing equipment in the state of Massachusetts. The record shows that Rai directs, controls, and coordinates business for both NVS and ONCO from Texas so that the "principal place of business" or the "nerve center" of ONCO is in Texas. *See Hertz*, 559 U.S. at 80–81, 130 S. Ct. at 1186. ONCO's acts justify a conclusion that it could reasonably anticipate being called into a Texas court. *See Retamco*, 278 S.W.3d at 338.

## B. Specific Jurisdiction

The trial court made the following findings of fact relevant to specific jurisdiction:

> 24. At the time of the restructuring of [SVN], [ONCO] did not exist.
>
> . . . .
>
> 37. Pedestal's Notes are a subject of this lawsuit.
>
> . . . .
>
> 50. Pedestal did not consent to the conversion of its Notes to [ONCO] Notes.
>
> 51. [ONCO] issued new Notes to the Noteholders, including to Pedestal, in the name of [ONCO].
>
> . . . .

11

54. Pedestal has made demand for payment of its SVN Notes. To date, none of the Defendants has paid Pedestal any portion of its demand under any iteration of the Notes.

As previously stated, ONCO does not challenge the evidentiary sufficiency of the trial court's findings.

In its amended petitions, Pedestal added ONCO as a defendant and alleged causes of action for money had and received and for breach of contract. Pedestal alleged that ONCO is subject to specific jurisdiction because it is the current holder of the notes issued to Pedestal and has, therefore, contracted with a Texas resident on a matter that is the subject of this litigation. Pedestal further alleged that ONCO is a recipient or a beneficiary of Pedestal's investment.

ONCO argues that its contacts with Texas do not meet the requirements of specific jurisdiction because the alleged conduct does not connect it to Texas in a meaningful way and because Pedestal's causes of action do not arise from or relate to those contacts. Specifically, as to the money-had-and-received claim, ONCO argues that the transaction occurred in Massachusetts, not in Texas. ONCO further argues that the trial court did not find facts that support that either ONCO or Pedestal was required to perform under the ONCO notes in Texas.

ONCO also argues that pursuant to the terms of the Convertible Note Exchange Agreements the noteholders consented to venue and jurisdiction only in Delaware. However, Pedestal did not consent to the exchange of notes from NVS to ONCO.

12

In *Kelly Investment, Inc. v. Basic Capital Management, Inc.*, Kelly purchased notes from Dynex Commercial Inc. knowing they were subject to litigation in Texas. 85 S.W.3d 371, 373 (Tex. App.—Dallas 2002, no pet.). The plaintiffs joined Kelly as a defendant in the suit, and Kelly filed a special appearance. *Id.* at 374. The court considered whether there was specific jurisdiction over Kelly. *Id.* Kelly argued that there were insufficient minimum contacts "based on the evidence that it is a California corporation with no place of business in Texas, it negotiated the purchase in Virginia, and the [n]otes concern properties located in Louisiana." *Id.* In concluding that Kelly purposefully established minimum contacts, the court stated that Kelly initiated a substantial connection with Texas when it purchased the notes knowing that the notes were the subject of pending litigation in Texas. *Id.* at 375–76.

Pedestal's original SVN investment is now in the form of ONCO promissory notes, and those notes are the subject of this litigation. Rai conducted three meetings from Texas to facilitate the exchange of NVS Notes for ONCO Notes while this lawsuit was pending. As in *Kelly*, ONCO exchanged the NVS notes knowing that they were subject to litigation in Texas. We hold that by exchanging the notes, ONCO undertook a purposeful act that engendered a relationship between ONCO, the Texas forum, and the subject matter of the pending litigation; therefore, specific jurisdiction is appropriate. *See id.* at 375.

## C. Traditional Notions of Fair Play and Substantial Justice

Having held that ONCO established minimum contacts with Texas, we now must determine whether the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. Even when a nonresident has established minimum contacts with Texas, due process permits Texas to assert personal jurisdiction over the nonresident only if doing so comports with "traditional notions of fair play and substantial justice." *TV Azteca*, 490 S.W.3d at 55 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945)). "If a nonresident has minimum contacts with the forum, rarely will the exercise of jurisdiction over the nonresident not comport with traditional notions of fair play and substantial justice." *Moncrief Oil*, 414 S.W.3d at 154–55. We undertake this evaluation in light of the following factors, when appropriate: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Spir Star*, 310 S.W.3d at 878. To defeat jurisdiction, the defendant "must present 'a compelling case that the presence of some [other] consideration[s] would render jurisdiction unreasonable.'" *Id.* (quoting *Guardian*

14

*Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991)).

Rai, SVN, and NVS were all parties to the litigation before ONCO was added as a defendant. SVN has acknowledged that it does business in Texas and filed counterclaims in the litigation. ONCO, NVS, and SVN share directors and executives. As CEO of both NVS and ONCO, Rai is an essential party to the litigation. In addition, the CFO of ONCO is a Texas resident. Therefore, there is no additional burden to ONCO in litigating the suit in Texas.

Texas has an interest in adjudicating the suit because it involves companies doing business in Texas. Pedestal has an interest in pursuing effective and efficient resolution of its claims in a single forum. This is not one of the rare cases where exercising jurisdiction fails to comport with fair play and substantial justice. *See Moncrief Oil*, 414 S.W.3d at 155. Moreover, traditional notions of fair play and substantial justice weigh against this attempt to divest the trial court of jurisdiction over the corporate entity holding the notes that are the subject of the litigation.

We hold that the trial court did not err by denying ONCO's special appearance. We overrule the first and second issues.

## V.  CONCLUSION

Having overruled ONCO's two issues, we affirm the trial court's denial of the special appearance.

/s/ Megan Fahey

Megan Fahey
Visiting Judge

Delivered:  August 17, 2023

16