**Opinion filed May 8, 2026**



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00218-CV
_____

**COLE JOHNSON, Appellant**

**V.**

**MACK PERMIAN, LLC, Appellee**

**On Appeal from the 142nd District Court**

**Midland County, Texas**

**Trial Court Cause No. CV59036**

## M E M O R A N D U M   O P I N I O N

Appellant, Cole Johnson, appeals the trial court's judgment in favor of Appellee, Mack Permian, LLC, finding that Johnson breached his personal guaranty of the lease and was liable for actual and liquidated damages, costs, interest, and attorney's fees. In one issue, Johnson asserts that the trial court erred in awarding liquidated damages. We affirm.

## I. *Factual and Procedural History*

In July 2019, Johnson's construction company, Bighorn Investments and Properties (Bighorn), as lessee, entered into a commercial property lease with Miss Henley Holdings, LP (Henley), as lessor. The lease was for a term of sixty months, established rent at $14,500 per month, and included the following relevant provision under Section 5.01(b): "In the event [Bighorn] makes its monthly payment more than FIVE (5) days past the tenth of each month, [Bighorn] agrees to pay [Henley] $250.00 per day as additional liquidated damages for its tardiness and breach of the terms and conditions of this agreement." Johnson executed a personal guaranty, assuming financial responsibility up to $870,000 for all amounts owed by Bighorn under the lease agreement.

In October 2021, Mack Permian purchased the subject property from Henley, assuming Henley's rights and obligations under the lease. On November 4, 2021, Mack Permian notified Bighorn and Johnson of its ownership and the assignment and informed them that, after the date of the letter, rental payments were due to Mack Permian. On November 3, 2022, Mack Permian filed suit against Johnson individually, alleging that Bighorn had defaulted under the terms of the lease and abandoned the property, Johnson's personal guaranty made him "fully liable for all rent, expenses and other costs due and owing by Bighorn," and Johnson had failed to honor his personal guaranty. Mack Permian proceeded on a cause of action for breach of contract and a claim for attorney's fees. Johnson filed an original answer February 8, 2023.

On April 13, 2023, Mack Permian filed a motion for summary judgment, seeking damages totaling $452,692.87 for past rent, expenses, and other costs and attorney's fees totaling $58,978.05. In support of its motion, Appellee attached a sworn affidavit by Crystalyn Schenkenberg, a senior controller for MACK Management, and Thomas G. Gruenert, Mack Permian's legal counsel.

In response, Johnson argued that Appellee failed to show entitlement to judgment as a matter of law:

> There is no evidence of the specific amount of any penalty charges, late fees, insurance, property taxes, and operating expenses incurred by [Mack Permian] and relating to the subject property, let alone the amount of rent due and owing for the period between June 2022 to April 2023, all of which presumably make up, in whole or part, the amount that [Mack Permian] claims is owed—$452,692.87.

Johnson additionally raised several objections to Mack Permian's summary judgment evidence, arguing that the attached affidavits were conclusory, were irrelevant, and constituted hearsay.

On September 6, 2023, Johnson filed a first amended original answer, asserting affirmative defenses that Mack Permian's claims were barred, in whole or in part, because Mack Permian failed to mitigate its damages and, alternatively, because the liquidated damages Mack Permian relied on violated "the rule of just compensation and function[ed] as an unenforceable penalty." In a response to Mack Permian's amended motion for summary judgment, Johnson argued that "[i]n or around July 2022," four months before Mack Permian brought suit, Bighorn had attempted to negotiate a lease termination with Mack Permian but it "refused to terminate the Lease and demanded [Bighorn] not only pay past due rent, but also 'liquidated damages' and attorney's fees." Johnson argued in his response that Appellee failed to mitigate damages and continued to assess penalties of $250 a day under Section 5.01(b) of the lease. Johnson averred that the harm caused by its failure to pay rent is calculable as Bighorn stopped paying rent in July 2022 when there remained twenty-four months of rent under the lease. Thus, Johnson surmised, Bighorn owed at most $350,000—significantly less than the $736,006.74 Appellee alleged they were owed.

3

In its response, Mack Permian argued Johnson provided no factual evidence in support of his allegations and failed to meet his burden to demonstrate that the "$250 per day late fee is an unenforceable penalty, rather than an enforceable liquidated damages provision which the parties to the lease agreed to."

On September 20, 2023, the trial court granted in part and denied in part Mack Permian's motion for summary judgment, granting its motion on the breach-of-contract claim and awarding monetary damages in the amount of $350,000. The trial court denied the motion on the issue of liquidated damages and attorney's fees and set those matters for a bench trial.

The bench trial was held on February 20, 2024, to determine the imposition of liquidated damages and assessment of attorney's fees. The parties disputed the legality of the $250 per day liquidated damages clause in the lease.

Schenkenberg testified as Mack Permian's legal representative. Schenkenberg testified that the subject property was a "dirt lot with a single building and a fenced-in yard." Schenkenberg testified that at the time Appellee purchased the subject property from Henley, Bighorn was current on its rent. In February 2022, however, Bighorn became delinquent, but soon after repaid the past-due rent and liquidated damages owed. When Bighorn became delinquent once more in July 2022, the lease was terminated in November 2022, and the subject property was relet one year later in November 2023. Schenkenberg explained that Bighorn had left the property in disarray. Photographs of Bighorn's equipment and hazardous materials that remained on the property were admitted into evidence. According to Schenkenberg, Mack Permian also expended a substantial amount of time coordinating with Bighorn's creditors and lienholders who sought access to the property to repossess Bighorn's equipment.

Johnson testified that he started Bighorn, his first construction company, "from scratch." Johnson confirmed the last payment made pursuant to the lease was

4

in June 2022, with a partial payment made in July 2022. Johnson testified that after Bighorn received notice of the eviction in July 2022, there were multiple e-mails between Bighorn and Mack Permian because Bighorn sought to mitigate matters by "making a few payments and trying to get in to clean up the property." Johnson testified "two or three pages' worth" of equipment had been left on the leased property, including electrical transformers, settling tanks, multiple pumps, and shipping containers. Johnson testified that "we personally were not allowed on the property" to retrieve any of its equipment. On cross-examination, Johnson conceded many of the larger equipment items were under liens.

The trial court issued a final judgment, assessing liquidated damages in the amount of $114,250. The trial court additionally assessed $100,382 in attorneys' fees and court costs.[1]

## II. *Standard of Review*

In an appeal from a judgment after a bench trial, the trial court's findings of fact have the same weight as a jury verdict. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Villa v. Villa*, 664 S.W.3d 415, 418 (Tex. App.—Eastland 2023, no pet.). However, when, as in this case, no findings of fact and conclusions of law are made, we must imply all necessary findings to support the trial court's judgment. *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017); *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013). Implied findings of fact may be challenged for legal and factual sufficiency in the same manner as jury findings or a trial court's express findings of fact when the record includes a reporter's record. *Bradberry*, 526 S.W.3d at 480; *see Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996).

---

[1]Appellant does not challenge the imposed attorney's fees on appeal. We have included only testimony summaries and evidence relevant to the disposition of this appeal.

5

"Interpretation of a contract involves questions of law we consider de novo." *Bluestone Nat. Res. II, LLC v. Randle*, 620 S.W.3d 380, 387 (Tex. 2021). We will affirm the trial court's judgment if it can be upheld on any legal theory that is supported by the evidence. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam).

## III. *Liquidated Damages*

In one issue, Johnson argues the trial court "erred in awarding liquidated damages on the grounds that the award was an unenforceable penalty."

### A. *Applicable Law*

A liquidated damages clause establishes the amount of damages, agreed to in advance, to which the non-breaching party is entitled to receive from the breaching party. *Cintas-R.U.S., L.P. v. Dave's Tubing Testing & Hot Oil Serv., Inc.*, No. 11-19-00145-CV, 2021 WL 2371640, at *4 (Tex. App.—Eastland June 10, 2021, no pet.) (mem. op.) (first citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 664 (Tex. 2005); then citing *Garden Ridge, L.P. v. Advance Int'l, Inc.*, 403 S.W.3d 432, 449 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (Frost, J., concurring) (noting that a liquidated damages clause is for the benefit of both the breaching and the non-breaching party); and then citing 24 WILLISTON ON CONTRACTS § 65:1 (4th ed.) (*Validity of provisions for liquidated damages, generally*)). However, because "[t]he basic principle underlying contract damages is compensation for losses sustained and no more[,] . . . we will not enforce punitive contractual damages provisions." *FPL Energy, LLC v. TXU Portfolio Mgmt. Co.*, 426 S.W.3d 59, 69 (Tex. 2014). Consequently, when a liquidated damages provision is a *penalty* for failure to comply with a contract, it is unenforceable. *Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex. 1991).

"While the question may require a court to resolve certain factual issues first, ultimately the enforceability of a liquidated damages provision presents a question

6

of law for the court to decide." *FPL Energy, LLC*, 426 S.W.3d at 70. To enforce a liquidated damages provision, a court must find that "(1) 'the harm caused by the breach is incapable or difficult of estimation,' and (2) 'the amount of liquidated damages called for is a reasonable forecast of just compensation.'" *Id.* at 69–70 (quoting *Phillips*, 820 S.W.2d at 788); *S. Union Co. v. CSG Sys., Inc.*, No. 03-04-00172-CV, 2005 WL 171349, at *4 (Tex. App.—Austin Jan. 27, 2005, no pet.) (mem. op.). "Both findings are 'indispensable,' thus if either element is lacking, the provision is unenforceable." *Belfiore Devs., LLP v. Sampieri*, No. 01-17-00847-CV, 2018 WL 1161558, at *5 (Tex. App.—Houston [1st Dist.] Mar. 6, 2018, no pet.) (mem. op.) (quoting *FPL Energy, LLC*, 426 S.W.3d at 69). Courts evaluate the *Phillips* prongs "from the perspective of the parties at the time of the contracting." *FPL Energy, LLC*, 426 S.W.3d at 69–70. "The party seeking liquidated damages bears the burden of showing that the provision, as drafted, accounts for these two considerations." *Atrium Med. Ctr., LP v. Houston Red C LLC*, 595 S.W.3d 188, 192 (Tex. 2020).

"A properly designed liquidated damages provision, however, may still operate as a penalty due to unanticipated events arising during the life of a contract." *Id.* at 192–93. Thus, we "must also examine whether 'the actual damages incurred were much less' than the liquidated damages imposed, measured at the time of the breach." *Id.* (quoting *Phillips*, 820 S.W.2d at 788). A court cannot enforce the provision when the damages estimate proves to be inaccurate and "a significant difference exists between actual and liquidated damages." *Id.* In other words, even when a liquidated damages provision satisfies the *Phillips* prongs, the provision will not be enforced if there is an "unbridgeable discrepancy" between the provision as written and the reality of its application. *Id.* at 193, 198 (quoting *FPL Energy, LLC*, 426 S.W.3d at 72). It is the breaching party challenging the liquidated damages provision that must demonstrate this "unbridgeable discrepancy." *Id.* at 193.

B. *Estimating Harm Caused by the Breach*

Here, the sole basis for Mack Permian's recovery of liquidated damages is Section 5.01(b) of the lease, which states:

> In the event [Bighorn] makes its monthly payment more than FIVE (5) days past the tenth of each month, [Bighorn] agrees to pay [Henley] $250.00 per day as additional liquidated damages for its tardiness and breach of the terms and conditions of this agreement.

With respect to the first *Phillips* prong, i.e., whether the harm caused by the breach is incapable or difficult of estimation, Johnson argues that because this is "a basic breach of contract case," any damages to the lessor would be loss of revenue, which could be easily calculated by multiplying the rental rate set forth in the contract ($14,500 per month) by the number of months unpaid. *See FPL Energy, LLC*, 426 S.W.3d at 69–70. Mack Permian disagrees, arguing that at the inception of the lease, potential damages in case of a breach due to nonpayment were uncertain and were not limited to the recoupment of rent. By way of example, Mack Permian points to the issues that arose following Bighorn's failure to pay rent, including Mack Permian's time and effort spent recovering the unpaid rent and returning the subject property to its original condition. Evidence of these obstacles was adduced at trial through Schenkenberg's testimony. *See BMB Dining Servs. (Willowbrook), Inc. v. Willowbrook I Shopping Ctr. L.L.C.*, No. 01-19-00306-CV, 2021 WL 2231258, at *5 (Tex. App.—Houston [1st Dist.] June 3, 2021, no pet.) (mem. op.) (concluding potential damages resulting from a breach, such as "reletting the property, broker fees, repairing any damage to the property, bringing the property back to blank canvas status, and the intangible cost of a property siting vacant for an undeterminable period" rendered harm caused by the breach incapable or difficult to estimate, satisfying the first *Phillips* prong). Thus, the first prong is satisfied.

8

## C. *Reasonable Forecast of Just Compensation*

We next examine the second prong, the reasonableness of the damage forecast. *See FPL Energy, LLC*, 426 S.W.3d at 69–70. Here, Johnson argues that Mack Permian failed to carry its burden to prove that the contractual liquidated damages amount was reasonable and that *Stewart v. Basey*, 245 S.W.2d 484 (Tex. 1952) controls.

In *Stewart*, a lease provided for liquidated damages in the amount of $150 per month for the remainder of the unexpired term for any breach of the contract. 245 S.W.2d at 487. Significantly, the lease did not differentiate between a breach that was major, such as the failure to pay rent, or minor, such as the failure to "prudently use the premises." *Id.* at 485–87 (reviewing the provision, which stated, in relevant part: "The failure of Lessee to make said payment or payments *or* the breach of this contract otherwise by him shall render him liable to Lessors, as agreed liquidated damages") (emphasis added). The supreme court held that the provision was "not carefully drawn," and thus, it was an unreasonable and unenforceable penalty. *Id.* at 487 ("[S]ince the contract provided the same reparation for the breach of each and every covenant, and since it would be unreasonable and a violation of the principle of just compensation to enforce it as to some of them, the provision for stipulated damages should be treated as a penalty.").

In other words, *Stewart* recognized that provisions that apply the same measure of liquidation damages, regardless of the magnitude of the breach, are unreasonable. *Id.* By contrast, however, the provision here was far more narrow—triggered only by the failure to pay rent timely. *Cf. id.*; *Tempo Transp., LLC v. J.W. Logistics Operations, LLC*, No. 05-22-01035-CV, 2024 WL 3311144, at *6 (Tex. App.—Dallas July 5, 2024, no pet.) (mem. op.) (concluding that liquidated damages provision was unreasonable and therefore unenforceable because the provision failed to specify the violation triggering the provision, resulting in the assessment of

9

the same damages regardless of the severity of the violation); *see, e.g.*, *Bunker v. Strandhagen*, No. 03-14-00510-CV, 2017 WL 876374, at *9 (Tex. App.—Austin Mar. 3, 2017, no pet.) (mem. op.) (concluding a liquidated clause was reasonable in its damage forecast where the provision was "triggered by the violation of only one covenant, the length of the employment term").

For liquidated damages to be reasonable forecasts of just compensation, there must also be "at least some thought' in their making. *City of Colleyville v. Mart, Inc.*, No. 02-25-00276-CV, 2025 WL 2989769, at *5 (Tex. App.—Fort Worth Oct. 23, 2025, no pet.) (mem. op.); *Jacobson v. Prodel*, No. 06-19-00011-CV, 2019 WL 3720637, at *4 (Tex. App.—Texarkana Aug. 8, 2019, no pet.) (mem. op.). It is Mack Permian's position that the provision, establishing damages at $250 per day, amounted to "less than 2% of the monthly rent of $14,500, or approximately 52% of the monthly rent if the $250 per day was incurred for an entire 30 days," and was therefore reasonable. Accordingly, there appears to be at least some conservative comparative relationship to possible damages. At least one of our sister courts has held that where the specified amount of liquidated damages represents a relatively small percentage of the rental price, it will be construed as reasonable forecast as written. *See Jacobson*, 2019 WL 3720637, at *4 (citing *FPL Energy, LLC*, 426 S.W.3d at 72.

Finally, "[a]though parties cannot avoid a challenge to a liquidated-damages provision simply by characterizing it as 'reasonable,'" express language in the contracting document is "instructive of the parties' intent when the terms are mutually bargained for between equally competent parties." *Bunker*, 2017 WL 876374, at *10 (quoting *Southern Union Co. v. CSG Sys., Inc.*, No. 03–04–00172–CV, 2005 WL 171349, at *6 (Tex. App.—Austin Jan. 27, 2005, no pet.) (mem. op.)); *see also Arcturus Corp. v. Espada Operating, LLC*, No. 13-13-00713-CV, 2016 WL 4272381, at *5 (Tex. App.—Corpus Christi–Edinburg Aug. 11, 2016, no pet.) (mem.

10

op.) ("[W]hen it clearly appears from the terms of the contract that it was the intention of the parties that the sum stated should be treated as providing for liquidated damages, this intention will be enforced."); *Chan v. Montebello Dev. Co.*, No. 14–06–00936–CV, 2008 WL 2986379, at *5 (Tex. App.—Houston [14th Dist.] July 31, 2008, pet. denied) (mem. op.) (noting that contract language stating that liquidated damages provision was not a penalty reflected the parties' intent that the provision was not a penalty). Bighorn, as a signatory to the lease agreement, expressly acknowledged the terms of the agreement, and agreed to be bound by all of its covenants. Moreover, when Bighorn failed to pay rent in February and March 2022, Bighorn was billed for liquidated damages, which Bighorn paid—Johnson does not dispute this. Thus, the second *Phillips* prong is satisfied.

### D. *Unbridgeable Discrepancy*

Johnson also contends that the provision should not be enforced because it results in Mack Permian receiving money that exceeds the amount of its actual damages. *See FPL Energy, LLC*, 426 S.W.3d at 70. Under the unbridgeable discrepancy rule, "a liquidated damages provision may be unreasonable 'because the actual damages incurred were much less than the amount contracted for.'" *Id.* (quoting *Phillips*, 820 S.W.2d at 788). However, Johnson carries this burden and has not shown that the liquidated damages imposed exceeded Mack Permian's actual damages. *See Atrium Med. Ctr., LP*, 595 S.W.3d at 198 ("[W]hen a liquidated damages provision is facially reasonable, *the breaching party must present evidence* from which the court may find that an 'unbridgeable discrepancy' exists between actual and liquidated damages.") (emphasis added); *see also Graham Constr. Servs., Inc. v. City of Corpus Christi*, No. 13-22-00536-CV, 2024 WL 5272302, at *21 (Tex. App.—Corpus Christi–Edinburg Dec. 30, 2024, pet. denied) (mem. op.) (concluding rule of just compensation was not violated because appellant failed to "produce any

evidence regarding the City's actual damages" and "points to no such evidence in the record on appeal").

Moreover, a review of the record supports the finding that an unbridgeable discrepancy does not exist. Mack Permian argued at trial that it had calculated liquidated damages at $1,011,750. Of the $1,011,750 in liquid damages Mack Permian alleged they were owed, it sought $870,000—less $350,000 based on the trial court's previous ruling on monetary damages—because it was bound by the limits of Johnson's personal guaranty, which capped the amount Johnson would be responsible for at $870,000. The trial court then assessed liquidated damages at $114,250, far less than the amount Appellee sought.

Johnson additionally argued before the trial court that Appellee had failed to mitigate damages. To the extent that Johnson means to raise the same issue on appeal, he also had the burden to "show how much actual damages were reduced, or could have been reduced, by mitigation." *Atrium Med. Ctr.*, 595 S.W.3d at 197. However, Johnson did not offer testimony concerning the amount of liquidated damages that could have been avoided through proper mitigation at trial. *See id.*; *see also BMB Dining Servs.*, 2021 WL 2231258, at *7.

We overrule Johnson's sole issue.

## IV. *This Court's Ruling*

We affirm the judgment of the trial court.


W. BRUCE WILLIAMS

JUSTICE

May 8, 2026

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

12